IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00329-WYD-CBS

CACHE LA POUDRE FEEDS, LLC, a Colorado limited liability company,
        Plaintiff,
v.

LAND O' LAKES, INC., a Minnesota corporation,
LAND O' LAKES FARMLAND FEED, LLC, a Minnesota limited liability company,
AMERICAN PRIDE CO-OP, a Colorado cooperative corporation,
POUDRE VALLEY COOPERATIVE ASSOCIATION, INC., a Colorado cooperative corporation,
FRANK BEZDICEK, individually, and in his official capacity as Director of Marketing, Land O' Lakes, Inc.,
ROBERT DEGREGORIO, individually, and in his official capacity as President, Land O' Lakes Farmland Feed, LLC, and
As yet unidentified entities and individuals participating in concert with the aforenamed defendants,
        Defendants.

---

## ORDER ON MOTION TO MODIFY SUBPOENAS DUCES TECUM

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on the Motion to Modify Subpoenas

Duces Tecum filed by Cache La Poudre Feeds, LLC ("CLP") on May 16, 2005 (doc. #

90) pursuant to Fed. R. Civ. P. 45(3)(A)(iii).  Pursuant to the Order of Reference dated

March 1, 2004 and the memorandum dated May 17, 2005 (doc. # 91), the Motion was

referred to the Magistrate Judge.  The court has reviewed the Motion, the Defendants'

Response (filed June 6, 2005) (doc. # 92), CLP's Reply (filed June 24, 2005) (doc. #

94), Defendants' Response to Affidavit (filed August 1, 2005) (doc. # 119), the exhibits,

the documents submitted to the court for *in camera* review, the entire case file, the

1

arguments presented by counsel at the hearing held July 11, 2005, and the

applicable law and is sufficiently advised in the premises.


I.      Statement of the Case

        CLP owns and operates a livestock feed manufacturing and sales operation in

Colorado.  (*See* Third Amended Complaint ("3AC") at ¶ 13).  CLP is the owner of

current federal and state trademark registrations for "PROFILE" livestock feeds.  (*See*

3AC at ¶ 14-15).  CLP alleges that Defendants began using the term "Profile" for its

livestock feed products.  On or about September 2002, Defendants' attempt to register

the term "Land O' Lakes Profile" with the United States Patent and Trademark Office

was rejected due to CLP's "PROFILE" trademark.  (*See* 3AC at ¶ 24-28).  CLP alleges

that Defendants continue to manufacture, offer, display, advertise, and sell infringing

Profile products and that the infringing products have caused the death of livestock.

(*See* 3AC at ¶ 55-56).

        In this civil action, CLP alleges six claims for relief for violation of federal

trademark laws, state trademark laws, and other state laws.  (*See* 3AC at ¶ 9).  The

operative complaint (3AC (filed November 18, 2004) (doc. # 62)) asserts claims for:

(1) violation of federal trademark laws, 15 U.S.C. §§ 1051-1128, (2) intentional

trademark infringement, (3) violation of state trademark law, Colo. Rev. Stat. §§ 7-70-

101 through 7-70-113, (4) violation of common law trademark rights, (5) unfair

competition pursuant to state and federal law, and (6) deceptive trade practices in

violation of, *inter alia*, the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 through 6-1-908, and Minn. Stat. § 325D.43 through 325D.48.  (*See* 3AC at ¶¶ 57-132).

Defendant Land O' Lakes Farmland Feed, LLC has alleged four counterclaims for: (1) violation of federal trademark law; (2) common law trademark infringement, (3) libel *per quod*, and (4) libel *per se.*  (*See* Answer to 3AC at ¶¶ 147-206).


II.    CLP's Motion to Modify Subpoenas Duces Tecum

Peter Webb is the president of Peter Webb Public Relations, Inc. ("PWPR"), a public relations firm hired by CLP as a third party consultant.  Heather Halpape is a senior account manager for PWPR.  In January 2004, CLP hired PWPR to perform services related to "consultation, planning and implementation of a public relations program designed to promote and enhance public awareness of Client's brand and current issues related thereto and to minimize problems with reverse brand confusion. . . ." ("Contract for Professional Services-Hourly" ("Contract"), Exhibit A to CLP's Motion).  Webb and Halpape have provided public relations services to CLP on behalf of PWPR.

On April 26, 2005, Defendants served subpoenas duces tecum on Webb and Halpape, commanding them to produce documents relating in any way to CLP or the Defendants.  (*See* Exhibits 2 and 3 to CLP's Motion).  By these subpoenas, Defendants seek information concerning, among other things, their counterclaims.

Pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iii), CLP seeks an order modifying "those subpoenas to preclude production of any materials for which a claim of privilege has been rightfully asserted by the Plaintiff . . . ." (CLP's Motion at p. 10).[1]  CLP asserts that documents relating to PWPR's work on behalf of CLP are protected by the work product doctrine.

III.     Standard of Review

        "First recognized by the Supreme Court in the landmark decision" of *Hickman v. Taylor*, 329 U.S. 495 (1947), the standard for the work product doctrine is now found in Fed. R. Civ. P. 26(b)(3).  *Goodyear Tire & Rubber*, 190 F.R.D. 532, 535 (S.D. Ind. 1999).  *See also Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n. 10 (10th Cir. 1998) (federal court addressing a claim of work product protection applies the uniform federal standard contained in Rule 26(b)(3)).  Rule 26(b)(3) provides in pertinent part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

        "[T]he work product doctrine is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward

4

litigation, free from unnecessary intrusion by his adversaries." *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 332 (S.D. N.Y. 2003) (internal quotation marks and citations omitted). The doctrine seeks to protect the adversary system and "rests on the belief that such promotion of adversary preparation ultimately furthers the truth finding process." *Khandji v. Keystone Resorts Management, Inc.*, 140 F.R.D. 697, 699 (D. Colo. 1992) (quoting *Grumman Aerospace Corp. v. Titanium Metals Corp. of America*, 91 F.R.D. 84, 99 (E.D.N.Y. 1981)). "[P]rotections of the work-product privilege are important and should not be set aside lightly." *McNeil-PPC, Inc. v. Procter & Gamble Co.*, 138 F.R.D. 136, 138 (D. Colo. 1991).

A party asserting work product protection has the burden of establishing that the protection is applicable. *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D. Colo. 1998). *See also In re Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1042 (10th Cir.1998) (party asserting the work product doctrine has the burden of showing the applicability of doctrine); *Barclaysamerican Corp. v. Kane*, 746 F.2d 653 (10th Cir.1984) (party seeking to assert work product doctrine as a bar to discovery has the burden of establishing that doctrine is applicable). For a document to be covered by the work product doctrine, three elements must be met. The material must be (1) otherwise discoverable, and (2) prepared in anticipation of litigation, (3) by a party to the lawsuit (or a party's representative). *Miller v. Ford Motor Co.*, 184 F.R.D. 581, 582-83 (S.D. W. Va. 1999) (citations omitted). *See also Burton v. R.J.*

*Reynolds Tobacco Co.*, 167 F.R.D. 134, 139 (D. Kan. 1996) (to be protected by work product immunity, the party asserting the privilege must show (1) that the material is a document or tangible thing, (2) that the material was prepared in anticipation of litigation, and (3) that the material was prepared by or for a party or by or for the party's representative) (citation omitted).

The work product protection is available only if the primary motivating purpose behind the creation of the document was to assist in pending or impending litigation. *Aull*, 185 F.R.D. at 628 (citation omitted).  In determining whether materials were prepared in anticipation of litigation, a court must "look to whether in light of the factual context the document can fairly be said to have been prepared or otherwise obtained because of the prospect of litigation." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir.1996) (internal quotation marks and citation omitted).  "Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3)." *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998).  Thus, the court must determine whether the primary motivating purpose behind the creation of a document or investigative report was to aid in possible future litigation. *Stout v. Illinois Farmers Ins. Co.*, 852 F. Supp. 704, 706 (S.D. Ind. 1994) (internal quotation marks and citation omitted).

A document is "prepared in anticipation of litigation" if the preparer faces an actual claim or if the threat of litigation is substantial and imminent, or fairly

foreseeable. *See Kidwiler v. Progressive Paloverde Insurance Co.*, 192 F.R.D. 536, 542 (N.D. W.Va. 2000).  While "[d]ocuments prepared in the ordinary course of business, or that would have been created whether or not litigation was anticipated, are not protected by work-product immunity, . . . a document that assists in a business decision is protected by work-product immunity if the document was created because of the prospect of litigation." *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 221 (S.D. N.Y. 2001) (citations omitted).  In considering whether a document is prepared in anticipation of litigation or in the ordinary course of business, a court should consider: (1) the nature of the document; (2) the nature of the litigation; (3) the relationship between the parties; (4) the involvement of counsel; and (5) the time when the document was created. *Kidwiler*, 192 F.R.D. at 542.  "Once it is established that a document was prepared in anticipation of litigation, work-product immunity protects documents prepared by or for a representative of a party, including his or her agent." *In re Copper Market Antitrust Litigation*, 200 F.R.D. at 221 (internal quotation marks and citation omitted).

IV.    Analysis

The Contract does not expressly state that PWPR was hired by CLP for purposes of litigation.  Nevertheless, the court's review of the documents submitted *in camera* reveals that the primary motivation behind the creation of the subpoenaed documents was to aid in litigation.

7

Based upon the court's review of the material submitted *in camera*, it is clear that the documents disclose communications between CLP, PWPR, and CLP's counsel that relate directly to the litigation initiated by CLP. CLP had never before hired a public relations firm. CLP hired PWPR one month prior to filing this lawsuit. (Affidavit of Ronald Treiber dated July 15, 2005; Contract (dated January 28, 2004)). Ronald Treiber, CLP's sole owner, has testified that PWPR "was hired to assist [CLP] and me with different aspects of the lawsuit against the Defendants." (Affidavit of Ronald Treiber dated July 15, 2005 (submitted *in camera*)).

CLP and PWPR intended and agreed that communications between CLP, PWPR, Webb, and Halpape would be confidential. (*See* Contract at section IX; Affidavit of Ronald Treiber dated July 15, 2005 (submitted *in camera*); Confidentiality Agreements (submitted *in camera*)). A document is protected by the work product privilege if it was prepared in anticipation of litigation by a party or that party's representative, and was intended to remain confidential. *See, e.g., RTC v. Heiserman*, 151 F.R.D. 367, 373 (D. Colo. 1993); Fed. R. Civ. P. 26(b)(3).

The scope of the services that PWPR proposed to perform for CLP was based on the lawsuit CLP intended to file. (Letter dated February 2, 2004 (submitted *in camera*)). PWPR's work on behalf of CLP arose out of and related to the lawsuit. (Message Points; attorney notes dated January 29, 2004 (submitted *in camera*)). The documents submitted *in camera* demonstrate that PWPR conducted research and provided advice on matters related to the substance and procedural posture of the

8

lawsuit.  (*See, e.g.,*FAX dated March 31, 2004 from Treiber to Webb; e-mails dated February 20, 2004, March 24, 2004 (submitted *in camera*)).  CLP's counsel reviewed work done by PWPR for CLP and communicated with PWPR regarding the lawsuit. (*See, e.g.,*e-mails dated February 11, 2004, February 12, 2004, letter dated February 5, 2004 (submitted *in camera*)).  The subpoenaed documents contain information that bears on the strategy of CLP's counsel in the litigation.  The subpoenaed documents were prepared and circulated between PWPR, CLP, Treiber, and CLP's counsel in relation to litigation.

In sum the court finds that the subpoenaed documents constitute work performed in anticipation of litigation and are protected by the work product doctrine.

V.     Substantial Need Exception to Work Product Protection

Once the movant meets the burden of showing that the materials were prepared in anticipation of litigation, then the opposing party has the burden of overcoming the work product protection.  *Hickman*, 329 U.S. at 512.  Work product protection may be overcome "if the requesting party shows it has substantial need of the material and that it is unable without undue hardship to obtain the substantial equivalent of the material by other means."  *Marcin Engineering, LLC v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516, 525 (D. Colo. 2003) (citations omitted).  *See also Mason C. Day Excavating, Inc. v. Lumbermens Mutual Casualty Company*, 143 F.R.D. 601, 606 (M.D.N.C. 1992) (party relying on the substantial need exception "bears the

burden of proof and persuasion") (citations omitted).  Even when such a showing has

been made, however, a court must take care to protect from discovery "disclosure of

the mental impressions, conclusions, opinions, or legal theories of an attorney or

other representative of a party concerning the litigation." *Hartman v. Banks*, 164 F.R.D.

167, 169 (E.D. Pa.1995).[2]

Defendants assert that they have a substantial need to discover

communications with PWPR, Webb, and Halpape because the communications are

necessary to contradict CLP's assertion that it had a reasonable basis for alleging the

amount of wrongful profits that Defendants earned.  The information Defendants seek

may be developed through depositions and other discovery.  Any information

regarding the basis for the allegation of wrongful profits would be known to CLP

and/or Treiber.

There is no reason to believe that PWPR, Webb, or Halpape would have any

additional  information regarding the basis for the allegation of wrongful profits.

Defendants have conducted discovery, which included written discovery and the

deposition of Treiber, in order to substantiate CLP's claim for wrongful profits.  (*See,*

*e.g.,* Plaintiff's Answers to Defendant's First Set of Interrogatories, attached to CLP's

Reply to Motion).  Defendants have had ample opportunity to learn the basis for CLP's

allegation of wrongful profits through alternative means.

Further, the court has reviewed the subject documents *in camera* and notes

that the documents do not contain information that is of any relevance to Defendants'

10

search for the basis of CLP's allegation of wrongful profits.  For this reason also,

Defendants cannot show substantial need for the requested documents in the

preparation of their case, and thus cannot overcome the work product protection.

The subject documents remain protected under the work product doctrine.


Accordingly,

IT IS ORDERED that Cache La Poudre's Motion to Modify Subpoenas Duces

Tecum (filed May 16, 2005) (doc. # 90) is GRANTED.  PWPR, Webb, and Halpape

need not produce documents listed on CLP's Amended Privilege Log for which

PWPR, Webb, or Halpape was either a recipient or producer of the document.


**Advisement to the Parties**

Within ten days after service of a copy of a Magistrate Judge's order, any party

may serve and file written objections to the order.  Fed. R. Civ. P. 72(a).  "A judge of the

court may reconsider any pretrial matter . . . where it has been shown that the

magistrate's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).

*See also* Fed. R. Civ. P. 72(a) ("The district judge to whom the case is assigned shall

consider such objections and shall modify or set aside any portion of the magistrate

judge's order found to be clearly erroneous or contrary to law.").

Failure to make timely objections to the Magistrate Judge's order(s) may bar

review by the District Judge and may result in a waiver of the right to appeal.  *See*

11

*Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir.1997) ("[p]roperly filed objections resolved by the district court are a prerequisite to our review of a magistrate judge's order under 28 U.S.C. § 636(b)(1)(A)"); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991) (holding failure to timely object to a magistrate's findings waives appellate review of factual and legal questions). *But see, Morales-Fernandez v. INS*, ___ F.3d ___, 2005 WL 1871118 at * 2, slip op. No. 03-1111 (10th Cir. (Colo.) Aug. 9, 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 16th day of August, 2005.

BY THE COURT:


s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge


1.   Fed. R. Civ. P. 45(c)(3)(A)(iii) provides:
     (3)(A) On timely motion, the court by which a subpoena was issued shall
     quash or modify the subpoena if it . . .
          (iii) requires disclosure of privileged or other protected
          matter and no exception or waiver applies, . . .

2.   At the hearing held July 11, 2005, Defendants argued that CLP had waived work product protection of the subpoenaed documents by not objecting to questions asked of Treiber at his deposition. A party asserting waiver of a privilege has the burden of establishing the waiver. *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D. Colo. 1998). The court has before it only two pages of Treiber's deposition. (Exhibit B to Defendants' Response to CLP's Motion). Defendants have not

adequately demonstrated that CLP waived work product protection as to the subpoenaed documents.