IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  04-cv-329-WYD-CBS

CACHE LA POUDRE FEEDS, LLC, a Colorado limited liability company,

    Plaintiff,

v.

LAND O' LAKES, INC, a Minnesota corporation;
LAND O' LAKES FARMLAND FEED, LLC, a Minnesota limited liability company;
AMERICAN PRIDE CO-OP, a Colorado cooperative corporation;
POUDRE VALLEY COOPERATIVE ASSOCIATION, INC., a Colorado cooperative corporation;
FRANK BEZDICEK, individually, and in his official capacity as Director of Marketing, Land O' Lakes, Inc.;
ROBERT DEGREGORIO, individually, and in his official capacity as President, Land O' Lakes Farmland Feed, LLC; and
As yet unidentified entities and individuals participating in concert with the aforenamed defendants,

    Defendants.
_____

**ORDER**
_____

    **I.**    **Introduction**

THIS MATTER is before the Court on the parties' pending summary judgment motions.  These include Defendants' Motion for Partial Summary Judgment Regarding the Measure of Plaintiff's Alleged Damages (Refiling of Sealed Document # 145, # 156) [# 234], filed December 2, 2005; Defendants' Motion for Summary Judgment Regarding Plaintiff's Claims against Bezdicek and DeGregorio (Refiling of Sealed Document # 151, # 159) [# 238], filed December 2, 2005; Plaintiff's Motion for Summary Judgment on the Counterclaims [# 153], filed September 15, 2005; Plaintiff's Motion for Summary

Judgment and Opening Brief [# 143, # 155], filed September 15, 2005; and Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's Sixth Claim for Relief for "Deceptive Trade Practices" Related to LOL's SEC Filings (Refiling of Sealed Document # 149, # 158) [# 236], filed December 2, 2005.  I have reviewed the motions, responses, and replies, and on June 1, 2006, I heard argument from counsel on the same.  I address each of these motions below.

**II.    Analysis**

A.    Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "The burden of showing that no genuine issue of material fact exists is borne by the moving party." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  When applying this analysis, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quoting *Martin v. Kansas*, 190 F.3d 1120, 1129 (10th Cir. 1999)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* (quoting *Martin*, 190 F.3d at 1129).

### B. Defendants' Motion for Partial Summary Judgment Regarding the Measure of Plaintiff's Alleged Damages

In this motion, "Defendants seek a ruling (1) that Plaintiff is only entitled to an accounting of Defendants' profits upon a showing of willful infringement, (2) that Co-op Defendants could not have willfully infringed the relevant trademark as a matter of law, thus precluding the claim for their profits, (3) that if willfulness is found, Plaintiff can only recover Land O' Lakes Defendants' profits in the geographical areas of Plaintiff's actual market penetration, and finally, (4) that a reasonable royalty based upon a hypothetical negotiation is not an appropriate measure." Defs.' Mot. at 1–2.

I first address whether willfulness is required for a recovery of profits. On its face, section 35 of the Lanham Act states: "the plaintiff shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action." 15 U.S.C.A. § 1117(a). The Tenth Circuit has stated, "An accounting for profits is not automatically granted upon a showing of infringement. . . . Rather, the propriety of such relief is determined by equitable considerations. . . . Consequently, 'the district court has wide discretion to fashion an appropriate remedy.'" *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1222 (10th Cir. 1998)(internal citations omitted)("*Bishop I*"). The court recognized that "[t]here are two widely recognized rationales for awarding profits to a plaintiff who cannot demonstrate that he or she has suffered damages as a consequence of the infringement: preventing unjust enrichment and deterring willful infringement." *Id.* at 1222–23. It further stated, "Notwithstanding the existence of these theories of

recovery, we recognize that a finding of actual damage remains an important factor in determining whether an award of profits is appropriate." *Id.* at 1223. "More importantly, we are mindful that an award of profits requires a showing that defendant's actions were willful or in bad faith." *Id.* The court found, "Requiring a showing of willfulness before profits are awarded is an appropriate limitation in light of the equitable considerations underlying the monetary recovery provisions of the Lanham Act." *Id.* The court's opinion was reaffirmed in 2001. *See Estate of Bishop v. Equinox Int'l Corp.*, 256 F.3d 1050, 1054–55 (10th Cir. 2001)("*Bishop II*").

Recently, the Tenth Circuit issued an opinion that again addressed the willfulness issue. The court stated, "[W]e require a showing that Defendant actions were willful to support an award of profits under 15 U.S.C. § 1117(a)." *Western Diversified Servs., Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1273 (10th Cir. 2005). The court in *Western Diversified* noted that "[e]ven with a finding of wilfulness, a court may still exercise its discretion to reduce or even eliminate a profit award in the name of fashioning an equitable remedy to meet the needs of each case." *Id.* "Thus, an award of profits involves a two-step process: (1) a finding of willfulness or bad faith; and (2) a weighing of the equities." *Id.* "As a result, a court evaluating an award of profits claim at the summary judgment stage must confine its analysis to the first step: whether a genuine issue of fact exists as to willful infringement." *Id.*

Plaintiff argues that because actual damages are at issue in this case and recovery is not based on preventing unjust enrichment or deterring willful infringement, a showing of willfulness is not required to recover profits. I disagree. The Tenth Circuit

cases cited above make clear that willfulness is required for a recovery of profits irrespective of whether actual damages exist. While those cases concerned facts in which there were no actual damages, I do not find that the presence of actual damages changes the applicability of the Tenth Circuit cases. As such, I find that willfulness is required for Plaintiff to recover profits, and I grant Defendants' Motion on that issue.

Defendants second request for relief in this motion is a ruling that the Co-op Defendants—American Pride Co-Op and Poudre Valley Cooperative Association—could not have willfully infringed the relevant trademark as a matter of law, thus precluding the claim for their profits. Defs.' Mot. at 6–7. Defendants argue that there is no evidence that either of these Defendants willfully infringed Plaintiff's PROFILE mark by selling LOL's PROFILE product.

The Tenth Circuit has stated that willfulness involves an intent to benefit from the goodwill or reputation of the trademark holder. *Western Diversified Servs., Inc.* at 1274. Intent "requires something more than 'indifference' or a mere 'connection.' It is a conscious desire." *Id.* Thus, in order to survive summary judgment, Plaintiff CLP "does not have to show that [Defendants'] . . . decision was made with the intent to benefit from [Plaintiff's] . . . reputation or goodwill. It needs only raise a genuine issue on this material fact." *Id.* at 1274–75. I find that there is a factual dispute regarding the co-op Defendants' intent and that this issue cannot be decided on summary judgment.

The third and fourth issues in Defendants' Motion involve a request that if willfulness is found, the Court rule that Plaintiff can only recover Defendants' profits in the geographical areas of Plaintiff's actual market penetration, and, finally, a ruling that

a reasonable royalty based upon a hypothetical negotiation is not an appropriate measure.  Both parties spend a good amount of time and paper arguing about these issues.  However, as stated above, "An accounting of profits is not automatically granted upon a showing of infringement. . . . Rather, the propriety of such relief is determined by equitable considerations. . . . Consequently, 'the district court has wide discretion to fashion an appropriate remedy.'"  *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1222 (10th Cir. 1998)(internal citations omitted).

Regarding the argument on the third issue that actual market reach should be considered in limiting possible profits, Plaintiff argues that "[s]uch a limitation would arise, if at all, from a court's consideration of principles of equity pertinent to a particular case.  Determinations of equity are case specific and revolve around the facts involved in the case."  Pl.'s Resp. at 8.  Plaintiff further asserts, "What, if any, equitable considerations are necessary or appropriate in the present case cannot be determined until all the facts have been fully presented and thus summary judgment would be inappropriate."  Pl.'s Resp. at 8.  I agree with Plaintiff on this issue and find that summary judgment must be denied to the extent Defendant seeks a ruling that Plaintiff can only recover Defendants' profits in the geographical areas of Plaintiff's actual market penetration.  This is part of what the Court will consider in weighing the equities.  I find the same is true of the fourth issue regarding whether a reasonable royalty based upon a hypothetical negotiation is an appropriate measure.  Making a determination of exactly what type of awards Plaintiff may be permitted to recover is not appropriate at this time.  Summary judgment is denied as to these two requests in

Defendants' Motion.

    C.    <u>Defendants' Motion for Summary Judgment Regarding Plaintiff's Claims against Bezdicek and DeGregorio</u>

Plaintiff has asserted claims against two former employees of Defendant Land O'Lakes Farmland Fee (LOLFF) in their individual capacities; these are Frank Bezdicek and Robert DeGregorio. Plaintiff does not seek separate damages from these individuals, and Defendants assert that neither Bezdicek nor DeGregorio was the moving force behind the alleged infringement and request that all of Plaintiff's claims against these Defendants be dismissed with prejudice. Defs.' Mot. at 2. Defendants argue that these individuals were on the sidelines of the PROFILE project—that DeGregorio was an executive "rubber stamp" and the Bezdicek was a marketing communications manager who acted as a liaison between the legal department and the marketing team that developed the PROFILE mark for use as a brand. Plaintiff, however, argues that both individuals played much larger roles in the development of the PROFILE brand.

The parties do not dispute the legal standard applicable for personal liability; rather, they dispute whether these individuals' levels of involvement rise to the level necessary for personal liability. "To be personally liable, corporate officers or directors must do more than merely control corporate affairs: they must personally take part in infringing activities or specifically direct employees to do so." McCarthy on Trademarks and Unfair Competition § 25:24 (4th ed.).

While the evidence is not strong that these two Defendants were the driving force behind the infringement, there is certainly a factual dispute about their roles in

-7-

developing and launching LOLFF's PROFILE brand.  As such, I deem that summary judgment is inappropriate, and Defendants' Motion is denied.

      D.    <u>Plaintiff/Counterclaim Defendant's Motion for Summary Judgment on the Counterclaims</u>

Counterclaimants Land O' Lakes, Inc. and Land O' Lakes Farmland Feed, LLC (collectively "LOL") have asserted four counterclaims, including two based on trademark infringement and two based on defamation.  Plaintiff/Counterclaim Defendant CLP claims that LOL has not produced evidence supporting either claim and that summary judgment is appropriate.

In addressing the trademark counterclaim, the parties don't seem to dispute how it is evaluated.  CLP stated, "Section 7(c) of the Lanham Act confers 'a right of priority, nationwide in effect,' in CLP's favor unless LOLFF can establish it used the PROFILE mark prior to March 26, 2002."  Pl.'s Mot. at 8–9.  March 26, 2002, is the date CLP filed its application to register the PROFILE mark, which ultimately matured into a registration.  CLP claims that Defendant has produced no evidence that it actually used the PROFILE mark before this date.  Pl.'s Mot. at 9.  LOL, however, claims that it sold over $1 million in PROFILE products before March 26, 2002, in areas remote to CLP and that it has provided CLP with sales documentation to this effect.  Counterclaimant's Resp. at 1.  The parties recently filed a number of invoices related to this issue to support their respective positions.

I find that there is obviously a factual dispute regarding this issue and that summary judgment is not appropriate on this counterclaim.  The number of exhibits alone show that there is a genuine issue of material fact as to Defendants' sales prior

to March 26, 2002.  Accordingly, Plaintiff's motion is denied to the extent it seeks summary judgment on Defendant's trademark counterclaim.

On the defamation claim, CLP argues that LOL cannot sustain its burden of proving that CLP acted with malice.  CLP points to testimony that in publishing the press release and brochure about PROFILE, it simply wanted to stop the confusion about PROFILE, tell its side of the story and "open a dialogue."  Pl.'s Mot. at 12.  LOL asserts that there are facts in dispute concerning actual malice.  LOL points to the following facts to illustrate that LOL did not act in good faith: CLP filed suit and issued the press release the day before LOL's annual meeting, CLP sought media attention and to get the attention of LOL with its actions, and that CLP published statements that LOL "mislead" investors and the SEC.  Counterclaimant's Resp. at 9.

The Colorado Supreme Court has stated, "[T]he existence of malice, the question of good faith on the part of the defendants, and their honest belief in the truth of the statements put forth by them, all are matters of fact which are to be determined exclusively by the jury."  *Abrahamsen v. Mountain States Telephone and Telegraph Co.*, 494 P.2d 1287, 1289 (Colo. 1972)(en banc).  While the Colorado Supreme Court later acknowledged that "the question of malice *may* be appropriate for summary judgment," this is only when "there is no genuine issue concerning malice or reckless disregard." *Dominguez v. Babcock*, 727 P.2d 362, 367 (Colo. 1986)(en banc).  I find that there is a genuine issue of material fact surrounding the issue of actual malice.

CLP next claims that even if the statements in the press release and brochure are found to be defamatory, those statements are privileged.  CLP claims that these

materials were published in the course of or pertinent to a judicial proceeding and are, thus, absolutely privileged. Pl.'s Mot. at 13. Colorado follows the Restatement of Torts in holding that: "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Seidl v. Greentree Mortgage Co.*, 30 F.Supp.2d 1292, 1313 (D. Colo. 1998)(Johnson, J.). Colorado courts have found that for the privilege to apply, "the maker of the statement and the recipient must be involved in and closely connected with the proceedings." *Id.* at 1314 (internal citations omitted). "This inquiry . . . turns to a large extent on determining to whom the publication was made. A measure of protection is, thus, afforded to an alleged victim of defamation for publication to the public at large or to third parties unconnected with the proposed proceeding." *Id.* (internal citations omitted). Further, "'The privilege may be lost by unnecessary or unreasonable publication to one for whom the occasion is not privileged. Thus, unnecessary publication to the news media may result in loss of the privilege, as well as publication to those wholly unconnected with the judicial process." *Id.* (internal citations omitted). CLP's statements, which were contained in a brochure and press release that were distributed to the public, are not absolutely privileged.

CLP further claims that even if it is not entitled to an absolute privilege, it is entitled to a qualified privilege. "Colorado law recognizes a qualified privilege for communications by a party with a legitimate interest to persons having a corresponding

interest and communications promoting legitimate individual, group, or public interests." *Burke v. Greene*, 963 P.2d 1119, 1122 (Colo. App. 1998). However, the qualified privilege is lost if the statement is made with malice—i.e., with knowledge that the statements were false or with reckless disregard for whether they were true or false. *Id.*; *see also Dominguez v. Babcock*, 727 P.2d 362, 366 (Colo. 1986)(en banc). This takes us back to the starting point of this analysis which considered whether there was a genuine issue of material fact regarding actual malice. Because I find there is a genuine issue of material fact as to Plaintiff's malice or reckless disregard, I find that summary judgment on this issue is improper. I, accordingly, deny Plaintiff's request for summary judgment on the counterclaim of defamation.

      E.      <u>Plaintiff's Motion for Summary Judgment Regarding Affirmative Defenses</u>

Plaintiff seeks summary judgment on two defenses asserted by Defendants. These include (1) that Defendant is an "innocent prior user of the 'PROFILE' mark under 15 U.S.C. § 1115(b)(5)" (Answer to Pl.'s Third Am. Compl. ¶ 137) and (2) that "Defendants have acted in good faith and are therefore immune from liability and damages." Answer to Pl.'s Third Am. Compl. ¶ 142. I address both of these in turn.

Plaintiff asserts that the statutory defense set forth at 15 U.S.C. § 1115(b)(5) does not apply because "[b]y its title and language, this statute applies to a particular class of federal trademark registrations, namely those that have become 'incontestable' under section 1065." Pl.'s Mot. at 7. Plaintiff further states, "It is undisputed that CLP's PROFILE registration has not yet become 'incontestable.' Incontestability has never been asserted in this case." Pl.'s Mot. at 8.

The Tenth Circuit has recognized that "[b]ecause section 33(b)(5) is a defense only to the conclusiveness of an evidentiary presumption arising from incontestability, it is clear that '[f]or marks whose registrations have not yet become incontestable, § 33(b)(5) is irrelevant.'" *GTE Corp. v. Williams*, 904 F.2d 536, 540 (10th Cir. 1990)(quoting 2 J. McCarthy, Trademarks and Unfair Competition § 26:18D, at 331 (2d ed. 1984)).  The Tenth Circuit specified that "a mark becomes incontestable if continuously used for five consecutive years after registration, provided it does not infringe valid rights acquired by common law usage before the date of publication of the registered mark." *Id.* at 540 n. 3 (citing 15 U.S.C. § 1065).

Defendants do not claim the mark is incontestable and at the hearing on these motions, Defendants conceded that this defense is not applicable to the present action. Because there is no dispute over whether the mark is incontestable and because this statutory defense applies only to trademark registrations which have become incontestable, I find that summary judgment is proper and that Plaintiff's motion should be granted to the extent it seeks summary judgment on Defendants' defense under 15 U.S.C. § 1115(b)(5).

Next, I address the "common law defense." "The common law has long recognized that 'the national senior user of a mark cannot oust a geographically remote good-faith user who has used the mark first in a remote trade area.' 2 *Trademarks and Unfair Competition* § 26:1D, at 287; *see Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916) (*Tea Rose); United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918)." *GTE Corp.* at 541.  In

*GTE Corp.*, the Tenth Circuit noted that the defendant was an intermediate junior user—i.e., the one who adopted the mark after the senior user but before the senior user's registration—and, thus, the Tea Rose-Rectanus defense was available to him. *Id.* LOL claims that it is an intermediate junior user and that this defense is also available to it.

Plaintiff believes that summary judgment should be granted on this defense because LOL's use of PROFILE was not remote from CLP's market area. LOL intended to use the term nationwide, which would, Plaintiff argues, encompass Plaintiff's market area. LOL, however, states that by the time CLP filed its application to register the PROFILE mark (March 26, 2002), LOL had already been selling feed throughout the United States, including in 18 states where Plaintiff never sold its product. Def.'s Resp. at 12. Plaintiff simply points to the fact that LOL intended for its product to have a nationwide reach as proof that LOL's use was not remote. It states, "LOL even admits that its [sic] did overlap CLP's market area. The most clear example of this is the fact that CLP sells its feed in the state of Colorado (among other locations)." Pl.'s Mot. at 11.

I do not find Plaintiff's argument convincing. Defendants have provided evidence that LOL used its PROFILE brand in areas where Plaintiff had not sold its product. While the entirety of Defendants' sales were not remote, there is evidence that some of Defendants' sales were in a geographic areas remote to Plaintiff's use. Because I find there is an issue of fact regarding geographical remoteness and because the issue of whether LOL acted in good faith clearly involves a genuine issue

of material fact, I find that summary judgment is not appropriate on this defense.

      F.    <u>Defendants' Motion for Summary Judgment Regarding Plaintiff's Sixth Claim for Relief for "Deceptive Trade Practices" Related to SEC Filings</u>

In this motion, Defendants move for summary judgment on Plaintiff's Sixth Claim for Relief as it relates to statements made by LOL in its Securities and Exchange Commission ("SEC") filings. Defs.' Mot. at 1. It specifically addresses whether LOL's 2003 Form 10-K filed with the SEC contained misrepresentations concerning the PROFILE trademark that can form the basis for a deceptive trade practice under the Colorado Consumer Protection Act ("CCPA"). Defendants note that "[w]ith respect to Plaintiff's claim that the alleged trademark infringement constitutes a deceptive trade practice under the Colorado Consumer Protection Act, Defendants do not seek summary judgment related to that specific claim." Defs.' Mot at 1, n. 1.

To sustain a claim under the CCPA, Plaintiff must show the following: 1) that Defendants engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of Defendants' business; (3) that it significantly impacts the public as actual or potential consumers of Defendant's goods, services, or property; (4) that Plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused Plaintiff's injury. *Rhino Linings USA v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003)(en banc). Defendants state, "Plaintiff . . . has failed to establish that any evidence exists to support its CCPA claim as it relates to the Form 10-K." Defs.' Mot. at 6. However, I find that there are genuine issues of fact surrounding the elements of this claim as to LOL and the other Defendants. Therefore, I decline to grant summary judgment as to any aspect of this

claim.

### III. Conclusion

Based on the foregoing, it is

ORDERED that Defendants' Motion for Partial Summary Judgment Regarding the Measure of Plaintiff's Alleged Damages (Refiling of Sealed Document # 145, # 156) [# 234], filed December 2, 2005, is **GRANTED IN PART AND DENIED IN PART**. It is **granted** to the extent it seeks a ruling that willfulness is required for a recovery of profits; it is **denied** in all other respects. It is

FURTHER ORDERED that Defendants' Motion for Summary Judgment Regarding Plaintiff's Claims against Bezdicek and DeGregorio (Refiling of Sealed Document # 151, # 159) [# 238], filed December 2, 2005, is **DENIED**. It is

FURTHER ORDERED that Plaintiff's Motion for Summary Judgment on the Counterclaims [# 153], filed September 15, 2005, is **DENIED**. It is

FURTHER ORDERED that Plaintiff's Motion for Summary Judgment and Opening Brief [# 143, # 155], filed September 15, 2005, is **GRANTED IN PART AND DENIED IN PART**. It is **granted** as to the 15 U.S.C. § 1115(b)(5) defense, and it is **denied** as to the common law defense. It is

FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Sixth Claim for Relief for "Deceptive Trade Practices" Related to LOL's SEC Filing (Refiling of Sealed Document # 149, # 158) [# 236], filed December 2, 2005, is **DENIED**.

Dated: June 21, 2006

          BY THE COURT:

          s/ Wiley Y. Daniel
          Wiley Y. Daniel
          U. S. District Judge