IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00329-WYD-CBS

CACHE LA POUDRE FEEDS, LLC

      Plaintiff,

v.

LAND O'LAKES, INC.,
LAND O'LAKES FARMLAND FEED, LLC.,
AMERICAN PRIDE CO-OP,
POUDRE VALLEY COOPERATIVE ASSOCIATION, INC.,
FRANK BEZDICEK, and
ROBERT DeGREGORIO,

      Defendants.

---

## MEMORANDUM ORDER REGARDING PLAINTIFF'S MOTION
## FOR RELIEF FROM DISCOVERY VIOLATIONS

---

Magistrate Judge Craig B. Shaffer

      THIS MATTER comes before the court on Plaintiff Cache La Poudre Feed, LLC's

Motion for Relief from Discovery Violations (doc. # 291). With this motion and the attached

exhibits, Cache La Poudre seeks relief from alleged discovery violations committed by Defendants

Land O'Lakes, Inc. and Land O'Lakes Farmland Feed LLC (collectively "Defendants" or "Land

O'Lakes"). More specifically, Plaintiff asks the court to appoint a special master (at Defendants'

expense) who would be charged with evaluating Land O'Lakes' discovery production efforts and,

if necessary, directing "completion of full and thorough efforts to locate and produce all

1

documentation in all forms available." Plaintiff also wishes to conduct additional depositions at Land O'Lakes' expense to explore allegations of spoliation. In addition, Cache La Poudre requests leave to prepare and submit adverse findings for the jury, and asks the court to impose a fine on Defendants that would be paid into the registry of the District Court. Finally, Plaintiff seeks an award of fees and costs "for all activities conducted to date and subsequently accomplished under the pending Motion to Compel Discovery."[1] Defendants' Response in Opposition to Plaintiff's Motion for Relief (doc. # 293) characterizes Plaintiff's motion as a thinly veiled "fishing expedition" predicated on assumptions that have no basis in law or fact.

By Order of Reference to Magistrate Judge, dated March 1, 2004, this matter was referred to the Magistrate Judge for the purpose of, *inter alia,* "hear[ing] and determin[ing] pretrial matters, including discovery and other non-dispositive motions."[2] After carefully reviewing the parties' arguments, the applicable case law and the entire court file, I will grant in part Cache La Poudre's motion.

## BACKGROUND

Plaintiff Cache La Poudre Feeds, LLC manufactures and sells animal feed in Colorado. Cache La Poudre claims that since March 1991, it has used its PROFILE trademark and sold PROFILE products in several states. Plaintiff owns current federal and state registrations for the

---

[1]The court's docket shows no pending motions to compel in this case. I presume that Plaintiff is referring to its earlier Motion to Compel Discovery (doc. # 137), which was granted in part and denied in part on October 14, 2006.

[2]The Tenth Circuit has noted that a motion's classification as "dispositive" or "non-dispositive" turns on the effect of the ruling, and not on a strict reading of the motion's heading. *See Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1462 (10th Cir. 1988). However, "[d]iscovery is a nondispositive matter, and magistrate judges have the authority to order discovery sanctions." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997).

PROFILE trademark for livestock feeds.  Plaintiff contends that in 2001, more than ten years after

Cache La Poudre established rights in its PROFILE mark, Defendants Land O'Lakes, Inc. and

Land O'Lakes Farmland Feeds, LLC began using the same trademark to re-brand over 400 of

their products and to consolidate 36 brands of animal feed products into one brand, PROFILE.

Plaintiff alleges that Defendants American Pride Co-Op and Poudre Valley Cooperative

Association, Inc. offer and sell the infringing PROFILE feeds manufactured by Land O'Lakes,

Inc. and Land O'Lakes Farmland Fees, LLC.  Defendant Frank Bezdicek and Defendant Robert

DeGregorio serve as marketing director and president, respectively, for Land O'Lakes Farmland

Feed.  Plaintiff's Third Amended Complaint, accepted for filing on November 17, 2004, asserts

claims for (1) federal trademark infringement, (2) intentional trademark infringement, (3)

infringement of state trademark rights, (4) infringement of common law trademark rights, (5)

unfair competition and (6) deceptive trade practices.

Land O'Lakes Farmland Feed, LLC has brought counterclaims against Cache La Poudre

for (1) trademark infringement, (2) common law trademark infringement, (3) libel *per quod* and

(4) libel *per se*.  The libel counterclaims are based on public statements that Plaintiff allegedly

made to the effect that Land O'Lakes Farmland Feed had generated profits of $132 million from

the sale of products under Plaintiff's PROFILE trademark, and that Land O'Lakes Farmland Feed

misled the Securities and Exchange Commission and investors with the filing of its 2002 Form 10-

K.  Counterclaim Plaintiff alleges that Cache La Poudre published these statements in a blatant

attempt to damage Land O'Lakes Farmland Feeds' reputation with the public and its investors.


This case has had a rather acrimonious history.  The court held a Fed.R.Civ.P. 16

scheduling conference on June 8, 2004. At that time, I accepted the parties' recommendations and set a discovery cut-off date of March 31, 2005, and a dispositive motion deadline of April 30, 2005. The Scheduling Order permitted each party to serve 30 requests for production, 60 interrogatories, and 60 requests for admission. The parties were allowed to take 30 depositions. On January 13, 2005, this court granted the parties leave to serve an additional 25 requests for production. On April 11, 2005, the court extended the discovery cut-off to July 25, 2005, and the dispositive motion deadline to August 12, 2005. On July 11, 2005, this court once more extended the discovery cut-off to August 31, 2005, and the dispositive motion deadline to September 15, 2005.

On September 10, 2004, the District Court granted Defendant Land O'Lakes Farmland Feed's Motion for Sanctions for Failure to Comply with Rule 11. That motion argued that an earlier claim for relief asserted by Cache La Poudre, entitled "Fraud by SEC Statement," was unsupported by the facts and existing law. *See* Plaintiff's Second Amended Complaint, at ¶¶ 114-124. The District Court concluded that this claim was not warranted by existing law or a nonfrivolous argument for the extension of Colorado law. The District Court awarded $5,942.50 in fees and costs to Land O'Lakes Farmland Feed.

Counterclaim Defendant Cache La Poudre filed its own Motion for Sanctions Pursuant to Fed.R.Civ.P. 37(c) on June 28, 2005. This motion accused Land O'Lakes Farmland Feed of making misleading representations concerning evidence of its counterclaim damages. This motion was granted in part and denied in part on July 11, 2005. I required Land O'Lakes Farmland Feed to supplement its Rule 26(a)(1)(A) disclosures regarding witnesses who may have information concerning its alleged damages, to supplement its Rule 26(a)(1)(C) damage disclosures and

4

produce any documents that may support its damage calculations, and to supplement its responses to interrogatories directed to the issue of damages. The court also held that Cache La Poudre was entitled to recover its reasonable fees and costs incurred in connection with that motion.

The instant case has spawned numerous discovery disputes and hearings.[3] The court file reflects no less than eight hearings or on-the-record telephone conferences during which the court addressed discovery disputes. Plaintiff's pending Motion for Relief follows an earlier Motion to Compel Discovery (doc. # 137) that was filed on August 31, 2005. The latter motion, which coincided with the deadline for completing discovery, sought "an order compelling the production of items and responses to interrogatories that have not yet been provided under pending discovery and to otherwise address insufficiencies in LOL's conduct." *See* Plaintiff's Motion to Compel Discovery, at 6. Plaintiff accused Land O'Lakes of not taking "the required steps . . . to preserve evidence in this litigation," and not meeting its obligation to locate all requested documents. *Id.* at 2-3. Although Cache La Poudre alluded to alleged improprieties in Land O'Lakes' approach to discovery and cited *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004) ("*Zubulake V*"), the Motion to Compel specifically sought additional production related to the following categories of documents or materials: (1) projections for PROFILE sales; (2) electronic communication documents, notes and daytimer information relating to PROFILE; (3) prior replaced product cross references and sales numbers; (4) nationwide sales data by

---

[3]Both sides have engaged in discovery conduct that unnecessarily protracted the litigation and increased its attendant costs for all parties. The unnecessarily rancorous tone of counsels' rhetoric, both in writing and during court hearings, has only exacerbated the situation and hindered the parties' ability to find a reasonable solution to their discovery disputes.

location, customer, amount and dates for 2001 and 2002; (5) product complaint information available in the Corporate Alpaca QA files, as well as plant active and archival customer complaint files; (6) a box of assembled PROFILE information; and (7) "unexplained redaction in July 1, 2004 and August 4, 2004 e-mail documents."

Defendants responded by suggesting that Plaintiff's Motion to Compel Discovery was "premised on a supposition that additional documents exist and accordingly should be produced, and that documents have either been destroyed or not preserved following the lawsuit." *See* Defendants' Opposition to Plaintiff's Motion to Compel Discovery, at 2. Defendants also asserted that

> many of the documents and much of the information that Plaintiff seeks in its Motion were not requested in the discovery requests upon which Plaintiff bases its Motion. Rather, Plaintiff's requests were, at the very least, vague and in many cases either incomprehensible or so overly broad and apparently burdensome they would have required LOL to produce practically every document in the company related to PROFILE.

*Id.*

On October 12 and 14, 2006, the court heard oral argument on Plaintiff's Motion to Compel Discovery. Like many of the discovery disputes in this case, neither side was immune from criticism. As a threshold matter, the court noted that Plaintiff's requests for production were not models of clarity. Plaintiff's Request for Production No. 3, illustrates this point:

> Please produce all documents concerning, referencing, evidencing, resulting from, or identifying any customer and distributor purchasing or product use characterizations, categorizations, studies, purchasing habits studies, commentaries, and customer and distributor purchasing estimates, projections, and predictions regarding the actual or potential purchase of any product bearing the term "profile" as an identifier or name and any such customer and distributor information regarding any product in competition with such, together with all historical drafts, earlier versions, draft versions, and all archive copies thereof for

each such document produced and with all documents that may identify all persons involved or participating in the creation of, use of, or actions referenced by such documents.

*See* Exhibit 1 attached to Plaintiff's Motion to Compel Discovery.  It is difficult to reconcile this sweeping language with Fed.R.Civ.P. 34(b), which requires the requesting party to "set forth, either by individual item or by category, the items to be inspected and describe each with reasonable particularity."  *Cf. Schartz v. Unified School District No. 512*, 1996 WL 741384, *1 (D. Kan. 1996) (holding that courts may find requests for production overly broad "when they are 'couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within [their] scope'").  *See also Sonnino v. University of Kansas Hospital Authority*, 2004 WL 764085, *5 (D. Kan. 2004) (held that a request for production that sought "all documents that relate or concern" a particular topic was "either excessively vague or overbroad in scope").

Many, if not all, of Plaintiff's requests for production suffer from the same lack of "reasonable particularity."[4]  Defendants had an obligation to construe Plaintiff's discovery requests in a reasonable manner.  *Cf. King-Hardy v. Bloomfield Board of Education*, 2002 WL 32506294, *5 (D. Conn. 2002) (holding that discovery requests must be given a reasonable construction, rather than straining to find ambiguity where there is none).  Defendants also were required to respond to any Rule 34 request to the extent the request was not objectionable.  *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 666 (D. Kan. 1999).  Yet, Plaintiff's Motion to Compel Discovery criticized Defendants for not having found the

---

[4]Plaintiff's failure to propound requests for production with greater precision is all the more troubling given the fact that the parties were permitted to serve a total of 55 requests of production.

"projections" needle in the haystack that is Request No. 3.  In fact, Cache La Poudre's attack on Defendants' alleged discovery shortcomings was substantially undercut by Plaintiff's own drafting deficiencies.[5]

This court denied Plaintiff's motion as to items (3) and (6).  I required Defendants to provide limited supplemental responses with respect to items (4) and (5), and to supplement their privilege log as to the documents identified in item (7).  On certain of the other outstanding items, the court found itself in a quandary as Plaintiff was alleging that Defendants had failed to fully comply with their discovery obligations, while Defendants insisted that requested documents did not exist and, therefore, could not be produced.  The court concluded that it did not have a sufficient factual record to address these items.  Therefore, I permitted Plaintiff to take a Fed.R.Civ.P. 30(b)(6) deposition to explore the procedures that Land O'Lakes employed to identify, preserve and produce responsive documents relative to specific items raised in Plaintiff's Motion to Compel Discovery.  *Cf. Doe v. District of Columbia*, 230 F.R.D. 47, 55 (D.D.C. 2005) (permitting plaintiff to explore in a Rule 30(b)(6) deposition "the District's document retention policies and procedures, and the process used to collect the documents that have been produced or will be produced by the District in response to plaintiff's requests for production of documents").  While the court granted in part and denied in part Plaintiff's Motion to Compel

---

[5]As another example, Plaintiff's Motion to Compel Discovery attacked Defendants' response to Request for Production No. 4 for failing to provide *nationwide sales data by location, customer, amount and dates for 2001 and 2002*.  In fact, Request No. 4 requested production of "all documents concerning, referencing, evidencing, resulting from, or identifying any amounts of money actually received or anticipated to be received by each Defendant, on their behalf, or for their benefit relative to any uses of the term 'profile' as an identifier or name of any product." As Plaintiff's counsel conceded during a hearing on October 14, 2006, the words "sales data," "customer" and "location" do not even appear in Request No. 4.  *See* Transcript of Hearing on October 14, 2006, at 11-12.

8

Discovery, I left open the possibility that Cache La Poudre might file a new motion to compel based on the testimony developed during the Rule 30(b)(6) deposition.

Plaintiff conducted a Rule 30(b)(6) deposition on June 15, 2006. Not surprisingly, this deposition was prolonged by disputes between counsel. Based on the testimony of Peter Janzen, the Rule 30(b)(6) deponent, Plaintiff filed the instant Motion for Relief from Discovery Violations. Cache La Poudre contends that relief is warranted based upon Defendants' failure to satisfy their discovery obligations and to produce relevant documents, as well as Defendants' destruction of relevant documents.

## ANALYSIS

Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information. *United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002). To that end, Rule 26(b) permits discovery "regarding any matter . . . that is relevant to the claim or defense of any party" or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." S*ee* Fed.R.Civ.P. 26(b)(1). *See also Williams v. Board of County Commissioners*, 192 F.R.D. 698, 702 (D. Kan. 2000) (a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense).

The Federal Rules of Civil Procedure recognize, however, that the right to conduct discovery is not absolute. For example, a party's right to obtain discovery may be constrained where the court determines that the requesting party has had ample opportunity by discovery to obtain the information sought, or determines that the burden or expense of the proposed

9

discovery outweighs its likely benefit, given the needs of the case, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2)(C). *Cf. Qwest Communications International, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) ("in every case, the court has the discretion, in the interests of justice, to prevent excessive or burdensome discovery"); *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 37-38 (D. Md. 2000) ("[t]he court is given great flexibility to order only that discovery that is reasonable for a case, and to adjust the timing of discovery and apportion costs and burdens in a way that is fair and reasonable"). The Federal Rules of Civil Procedure further permit a court to restrict or preclude discovery when justice requires in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed.R.Civ.P. 26(c).

The tension between these competing interests has been exacerbated by the information technology revolution. Courts now face the challenge of overseeing discovery at a time when potential access to electronically stored information is virtually limitless, and when the costs and burdens associated with full discovery could be more outcome-determinative, as a practical matter, than the facts and substantive law. Recently enacted amendments to the Federal Rules of Civil Procedure attempt to address, if not completely reconcile, these competing considerations. Commentators have proposed practices and standards for discovery that reflect the explosion in electronic documents and data. *See*, *e.g.,* The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production (Sedona Conference Working Group Series July 2005) [hereinafter *The Sedona Principles*]; American Bar Association, Civil Discovery Standards 57-75 (2004). The instant motion requires the court to

grapple with many of these same issues.

I.     *Land O'Lakes' Alleged Destruction of Relevant Documents*

Plaintiff's motion accuses Defendants of spoliation, based on Land O'Lakes' failure to

discontinue its practice after April 2002 of routinely eliminating e-mail and overwriting backup

electronic media.  Cache La Poudre insists that by allowing these practices to continue, Land

O'Lakes destroyed relevant and otherwise discoverable e-mails and other electronic information,

thereby insuring that this material would not be available through discovery.

To ensure that the expansive discovery permitted by Rule 26(b)(1) does not become a

futile exercise, putative litigants have a duty to preserve documents that may be relevant to

pending or imminent litigation.  *See Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216

(S.D.N.Y. 2003) ("the obligation to preserve evidence arises when the party has notice that the

evidence is relevant to litigation or when a party should have known that the evidence may be

relevant to future litigation").  "Spoliation" has been defined as "the destruction or significant

alteration of evidence, or the failure to preserve property for another's use as evidence in pending

or reasonably foreseeable litigation."  *See, e.g., West v. Goodyear Tire & Rubber Co.*, 167 F.3d

776, 779 (2d Cir. 1999).  *See also United States v. Koch Industries, Inc.*, 197 F.R.D. 463, 482

(N.D. Okl. 1998) (acknowledging a litigant's duty "to preserve evidence that it knows or should

know is relevant to imminent or ongoing litigation").

The court has inherent power to impose sanctions for the destruction or loss of evidence.

*See, e.g., Millsap v. McDonnell Douglas Corp.*, 162 F. Supp.2d 1262, 1309 (N.D. Okla. 2001).

*See also Procter & Gamble Co. v. Haugen*, 179 F.R.D. 622, 631 (D. Utah 1998) (recognizing a

court's inherent power and authority under Fed.R.Civ.P. 37(b)(2) to sanction a litigant "who is on

notice that documents and information in its possession are relevant to litigation, or potential

litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and

destroys such documents and information"), *judgment aff'd in part and rev'd in part on other*

*grounds*, 222 F.3d 1262 (10th Cir. 2000); *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D.

Minn. 1989) (holding that sanctions are appropriately levied when a party is on notice that

documents in its possession are relevant to pending or potential litigation, but still abrogates its

duty of preservation).

     In determining whether sanctions are appropriate, the court must first determine whether

the missing documents or materials would be relevant to an issue at trial.  If not, then the court's

analysis stops there.  If the missing documents would be relevant, the court must then decide

whether Land O'Lakes was under an obligation to preserve the records at issue.  Finally, if such a

duty existed, the court must consider what sanction, if any, is appropriate given the non-moving

party's degree of culpability, the degree of any prejudice to the moving party, and the purposes to

be served by exercising the court's power to sanction.

     Land O'Lakes began shipping its PROFILE products nationwide by at least January

2002.[6]  It is also undisputed that Land O'Lakes adopted an automatic e-mail destruction program

in May 2002.  *See* Deposition of Peter Janzen, at 53-54, attached as Exhibit 25 to Plaintiff's

Motion for Relief.  Pursuant to this program, any e-mails older than 90 days would be

automatically deleted, even if the e-mail was created before the elimination program was

---

     [6]While some Land O'Lakes employees in 2001 may have been aware of Cache La
Poudre's PROFILE mark, that knowledge alone is not sufficient to place the company on notice
of impending litigation.  *Cf. Zubulake v. UBS Warburg, LLC*, 220 F.R.D. at 217 ('[m]erely
because one or two employees contemplate the possibility that a fellow employee may sue does
not generally impose a firm-wide duty to preserve").

established.  *Id.  See Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005)

(recognizing that "document retention policies" are common in business and that a manager may

instruct employees to comply with a valid document retention policy under ordinary

circumstances).  The relevance of e-mails and electronically stored information created after 2001

that address the development and implementation of Land O'Lakes' PROFILE brand should be

self-evident.[7]

The second prong of the court's analysis, that is Land O'Lakes' duty to preserve, poses

greater problems for Cache La Poudre.  In most cases, the duty to preserve evidence is triggered

by the filing of a lawsuit.  However, the obligation to preserve evidence may arise even earlier if a

party has notice that future litigation is likely.  *See, e.g., Kronisch v. United States*, 150 F.3d 112,

126 (2d Cir. 1998) (the obligation to preserve evidence arises when a party should have known

that the evidence may be relevant to future litigation); *Henkel Corp. v. Polyglass USA, Inc.*, 194

F.R.D. 454, 456 (E.D.N.Y. 2000) (a party's obligation to preserve evidence arises when it has

notice of the evidence's relevance to litigation "likely to be commenced").  The undeniable reality

is that litigation "is an ever-present possibility" in our society.  *National Union Fire Insurance*

*Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992). While a party should not

be permitted to destroy potential evidence after receiving unequivocal notice of impending

litigation, the duty to preserve relevant documents should require more than a mere possibility of

litigation.  *See Hynix Semiconductor Inc. v. Rambus, Inc.*, 2006 WL 565893, *21 (N.D. Cal.

---

[7]*See McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 643 (D. Kan. 2003) (for purposes of
Rule 26(b)(1), "relevancy is broadly construed, and a request for discovery should be considered
relevant if there is 'any possibility' that the information sought may be relevant to the claim or
defense of any party")

2006).  Ultimately, the court's decision must be guided by the facts of each case.

Here, Plaintiff argues that Defendants "should have and did anticipate legal engagement with Cache La Poudre as early as April 4, 2002."  Having carefully reviewed all the exhibits proffered by the parties, I conclude that the record does not persuasively support Plaintiff's position.

It is undisputed that counsel for Cache La Poudre contacted Land O'Lakes' General Counsel, Peter Janzen, by telephone on April 4, 2002.  During that conversation, Mr. Janzen apparently was told that an individual in Colorado had been using the phrase "Profile Showcase" as a trademark for animal feeds since 1990.  Mr. Janzen was also aware in April 2002 that this same "individual filed an intent to use application in 2000 that was abandoned in 2001 for failure to respond."

On June 5, 2002, Cache La Poudre's outside counsel, Cheryl Anderson-Siler, wrote to Mr. Janzen to follow-up on her April telephone call.  In her June 5th letter, Ms. Anderson-Siler stated that Cache La Poudre had been using its PROFILE trademark for at least 10 years and expressed her client's concern over the possibility of confusion for "our respective customers." Ms. Anderson-Siler warned that Land O'Lakes' "very active marketing campaign . . . may present a situation that may become a very serious problem."  In closing, Ms. Anderson-Siler explained that the primary purpose of her letter

> is to clearly put [Land O'Lakes] on notice of our client's trademark rights and clearly establish the opportunities we have given Land O'Lakes to avoid exposure. The second purpose of this letter is to determine whether this situation can be resolved without litigation and media exposure . . . We think you will agree that the company's interests are best served by trying to resolve this unfortunate and difficult situation.

*See* Exhibit 54 attached to Plaintiff's Motion for Relief.

Rather than threatening impending litigation, Ms. Anderson-Siler's June 5th letter implied that her client preferred and was willing to explore a negotiated resolution. *Cf. Indiana Mills & Manufacturing, Inc. v. Dorel Industries, Inc.*, 2006 WL 1749410, *4 (S.D. Ind. 2006) (concluding that defendant could not reasonably anticipate litigation after receiving a letter from the patent holder which referred to infringement and the possibility of a negotiated resolution, but made no further threat of a lawsuit); *Claude P. Bamberger International, Inc. v. Rohm and Haas Co.*, 1997 WL 33768546, *3 (D.N.J. 1997) (in concluding that defendant had not anticipated litigation, noted that plaintiff's pre-filing correspondence had not threatened litigation, but rather sought a business remedy for perceived business wrongdoing). *Compare Washington Alder LLC v. Weyerhaeuser Co.*, 2004 WL 4076674 (D. Or. 2004) (finding that a letter from Washington Alder threatening to sue for antitrust violations put Weyerhaeuser on notice of possible litigation and triggered a duty to preserve documents).

In the wake of these developments, in June 2003, the parties again raised the possibility of a non-litigious resolution.[8]   On June 3, 2003, Land O'Lakes' outside counsel contacted Ms. Anderson-Siler to "explore the possibility of obtaining a consent from your client to register" the LAND O"LAKES PROFILE mark for agricultural animal feed.   Counsel closed his letter by saying he would "appreciate a call to discuss this possibility and terms."   *See* Exhibit 59 attached to Plaintiff's Motion for Relief.   Ms. Anderson-Siler responded by letter on June 17, 2003.   Her

---

[8]As of September 30, 2002, the United States Patent and Trademark Office had suspended action on the LAND O'LAKES PROFILE mark application since Defendants had filed that application after the effective filing date of Cache La Poudre's PROFILE mark application.   *See* Exhibit 55 attached to Plaintiff's Motion for Relief.

letter again expressed Cache La Poudre's concern "that Land O'Lakes is continuing to pursue registration of [its] mark as any use of such a mark in the feed industry would be likely to infringe our client's long-standing PROFILE trademark."  However, rather than threatening litigation, Ms. Anderson-Siler indicated her client "would be willing to listen to what Land O'Lakes might propose."  *See* Exhibit 60 attached to Plaintiff's Motion for Relief.

Cache La Poudre initiated legal action against Land O'Lakes on February 24, 2004 with the filing of its initial Complaint.[9]  As of that date, Defendants clearly had an obligation to preserve relevant evidence.  On March 5, 2004, for the first time, counsel for Cache La Poudre sent a letter to Peter Janzen which specifically put Land O'Lakes on notice to "prevent spoliation, destruction, alteration, modification, concealment, loss, secretion, or removal of evidence by any of the defendants."  Plaintiff's letter also notified Defendants that they had an affirmative obligation to maintain and preserve evidence.  *See* Exhibit 4 attached to Plaintiff's Motion to Compel Discovery.

This court recognizes that under different circumstances, a demand letter alone may be sufficient to trigger an obligation to preserve evidence and support a subsequent motion for spoliation sanctions.  However, such a letter must be more explicit and less equivocal that Cache La Poudre's 2002 and 2003 correspondence with Land O'Lakes.  In this case, Land O'Lakes had been selling under its PROFILE brand for several months before Ms. Anderson-Siler sent her first letter to Mr. Janzen.  Although Ms. Anderson-Siler noted the potential for customer confusion

---

[9]On February 2, 2004, the United States Patent and Trademark Office refused registration of Defendant's LAND O"LAKES PROFILE after concluding that such a mark was "likely to cause confusion, cause mistake or to deceive" as to the source of goods.  *See* Exhibit 62 attached to Plaintiff's Motion for Relief.

and alluded to Land O'Lakes' possible "exposure," her letter did not threaten litigation and did not demand that Land O'Lakes preserve potentially relevant materials. Rather, Cache La Poudre hinted at the possibility of a non-litigious resolution. Ms. Anderson-Siler's correspondence with Land O'Lakes' outside counsel in June 2003 was no more emphatic or explicit in raising the prospect of litigation. Ms. Anderson-Siler's correspondence in 2003 also did not include a demand for preservation of evidence. Given the dynamic nature of electronically stored information, prudent counsel would be wise to ensure that a demand letter sent to a putative party also addresses any contemporaneous preservation obligations.

In fact, Cache La Poudre waited nearly two years after Anderson-Siler's April 4, 2002 telephone conference with Peter Janzen to bring the instant lawsuit. That delay, coupled with the less-than adamant tone of Cache La Poudre's letters belies Plaintiff's contention that Land O'Lakes should have anticipated litigation as early as April 4, 2002, and therefore had a duty to preserve evidence as of that date. I acknowledge that the common-law obligation to preserve relevant material is not necessarily dependent upon the tender of a "preservation letter." *Cf. Thompson v. United States Department of Housing and Urban Development*, 219 F.R.D. 93, 100 (D. Md. 2003) (holding that a party's failure to request the preservation of documents "does not vitiate the independent obligation of an adverse party to preserve such information"). However, a party's duty to preserve evidence in advance of litigation must be predicated on something more than an equivocal statement of discontent, particularly when that discontent does not crystalize into litigation for nearly two years. Any other conclusion would confront a putative litigant with an intractable dilemma: either preserve voluminous records for a indefinite period at potentially great expense, or continue routine document management practices and risk a spoliation claim at

17

some point in the future.[10]

Plaintiff has described Land O'Lakes as a "$6 Billion dollar conglomerated entity," with no less than 40 local file servers at its main business office, and additional file servers at other business locations.  *See* Plaintiff's Motion to Compel Discovery, at 2; Plaintiff's Motion for Relief, at 13.  According to Land O'Lakes' current Director of Technology Services, since 2002 Land O'Lakes has managed over 400 servers, each of which is backed up on a daily basis, weekly for five weeks, monthly for a year, and annually forever.  *See* Declaration of Tony Taylor, attached as Exhibit O to Defendants' Response to Plaintiff's Motion for Relief.  Recently enacted amendments to the Federal Rules of Civil Procedure recognize that suspending or interrupting automatic features of electronic information systems can be prohibitively expensive and burdensome.

> [I]t is unrealistic to expect parties to stop such routine operation of their computer systems as soon as they anticipate litigation.  It is also undesirable; the result would be even greater accumulation of duplicative and irrelevant data that must be

---

[10]The practical implications of this pre-litigation burden are illustrated by Plaintiff's post-filing preservation demand sent to Land O'Lakes on March 4, 2004.  Cache La Poudre required Defendant to preserve "any documents, notes, materials, electronic files, or other evidence that may be evidence or may lead to discoverable evidence, actual or potential, relative to any use, decisions, discussions, or involvement whatsoever in the above referenced cases . . . [including] any item dealing with any use, decision, discussion, or involvement relative to the term 'Profile' or any trademarks, or branding or re-branding by or through any Defendant."  In the same demand letter, Cache La Poudre identified 48 separate categories of materials or information that Land O'Lakes would be expected to preserve, including "data files," "data stored by electronic means," and "backup tapes."  *But see Zubulake v. UBS Warburg LLC*, 220 F.R.D. at 216 (organizations need not preserve "every shred of paper, every email or electronic document, and every back-up tape"); *Wiginton v. CB Richard Ellis, Inc.*, 2003 WL 22439865, *4 (N.D. Ill. 2003) ("[a] party does not have to go to 'extraordinary measures' to preserve all potential evidence . . . [i]t does not have to preserve every single scrap of paper in its business").  *See also The Sedona Principles*, at 23 (the obligation to preserve electronic data and documents requires reasonable and good faith efforts to retain information that may be relevant; it is unreasonable to expect parties to take every conceivable step to preserve all potentially relevant data).

reviewed, making discovery more expensive and time consuming.

*See* May 27, 2006 Report of the Advisory Committee on the Federal Rules of Civil Procedure, at 71.[11]  Under the particular facts of this case, this court finds that Defendants' duty to preserve evidence was triggered by the filing of Plaintiff's Complaint on February 24, 2004.  Accordingly, Cache La Poudre's request for spoliation sanctions predicated on actions or omissions that occurred before that date is denied.

II.     *Land O'Lakes' Alleged Post-Filing Discovery Misconduct*

After February 24, 2004, Defendants unquestionably had an obligation to preserve and produce non-privileged materials responsive to properly framed discovery requests.  Land O'Lakes insists that it fully complied with this obligation, by conducting a reasonable inquiry to find responsive documents based upon its understanding of where such documents and information could be located.  In response to Cache La Poudre's discovery requests, Defendants claim to have produced over 50,000 pages of documents, including 415 e-mails related to PROFILE, and compact disks containing relevant data regarding PROFILE products.  *See* Defendants' Opposition to Plaintiff's Motion to Compel Discovery, at 1 and 16.

Land O'Lakes claims to have imposed a litigation hold within a matter of days after Plaintiff filed the instant lawsuit.  Defendants insist that this litigation hold prevented the destruction of any electronic documents in existence as of that date, as well as any subsequently produced electronic documents.  Land O'Lakes employees "understood that they were to save

---

[11]*See also The Sedona Principles,* at 16 ("it is neither feasible nor reasonable for organizations to take extraordinary measures to preserve documents if there is no business or regulatory need to retain such documents and there is no reasonable anticipation of litigation to which those documents may relevant").

any document that currently existed on their system, as well as in their files." *See* Deposition of Peter Janzen, at 14, attached as Exhibit 25 to Plaintiff's Motion for Relief.  Land O'Lakes looked for electronic documents in the possession of current employees, and printed versions of electronic documents generated by employees who left the company after February 2004.  No attempt was made to find electronic versions of documents prepared by departed employees because attorneys involved in the discovery process were under the impression that those materials no longer existed in electronic form since information systems personnel routinely cleaned an employee's computer hard drive after they left the company.  *Id.* at 13-14.

According to Janzen, when Land O'Lakes received a request for production in this case, it conducted a "reasonable inquiry" to find responsive documents.  Current employees who were involved in creating and marketing the PROFILE brand were asked to check for responsive materials, including paper documents, e-mails and compact disks.  *Id.* at 17, 18 and 69.  These materials were then turned over to outside counsel to be reviewed for relevancy.  *Id.* at 69 and 180.  As additional requests came in, Land O'Lakes expanded its inquiry to include individuals who might have materials responsive to those particular requests.  Janzen claims that he confirmed that Land O'Lakes employees understood that they were to produce all materials relating to the PROFILE litigation, and then re-confirmed that employees had produced all the required materials.  *Id.* at 46 and 187.  However, Janzen acknowledged that he relied on the employees' ability to locate responsive documents and gave each employee the discretion to identify documents that "related to the litigation."  *Id.* at 70 and 186.  Mr. Janzen and outside counsel simply accepted whatever materials employees provided.  *Id.* at 70.

Land O'Lakes concedes that it never reviewed information contained on backup tapes in

identifying and producing responsive materials.  As previously noted, Land O'Lakes has 400

servers, each of which is backed up on a daily basis, weekly for five weeks, monthly for a year,

and annually forever.  Land O'Lakes has approximately 400 back-up tapes for the years 2001-

2005.  When he was deposed, Mr. Janzen testified that he understood that "backup tape is kept

for ten days and then written over" and that Land O'Lakes does not have backup tapes for the

computer hard drives used by former employees.  *Id.* at 14.  Apparently, Mr. Janzen was not

aware that Land O'Lakes also has monthly and annual backup tapes.  *Id.* at 36.  Mr. Janzen

concluded that it was unnecessary to review backup tapes because he believed that any documents

on the backup tapes relevant to this litigation could also be found in another more readily

accessible location.  *Id.* at 136 and 138.  However, Janzen concedes that Land O'Lakes made no

attempt to verify his assumption.  *Id.* at 137.

 Mr. Janzen testified on June 15, 2006, that no efforts were made to contact former Land

O'Lakes employees in the course of identifying and collecting responsive materials.  Land

O'Lakes apparently never contacted former employees to determine how or where they might

have backed up information while they were with the company.  To the extent that relevant

documents had not been lost when hard drives were wiped clean, Janzen simply assumed that they

located on hard drives that were shared with current employees and, as such, would be found

through the discovery production process.  *Id.* at 92.

 Against this backdrop, Plaintiff argues that Land O'Lakes failed to properly discharge its

obligation to locate, preserve and produce all relevant, non–privileged materials after February 24,

2004.  More particularly, Cache La Poudre insists that after February 24, 2004, Defendants and

their counsel failed to make certain that all sources of potentially relevant information were

identified and placed "on hold."  This portion of Plaintiff's motion relies primarily on Judge

Scheindlin's decisions in *Zubulake v. UBS Warburg LLC*.  In particular, Cache La Poudre insists

that Defendants failed to comply with the following "duties" set forth in *Zubulake V*:

- once litigation is commenced or a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents;

- in furtherance of the "litigation hold," counsel must become fully aware of the client's document retention policies and data retention architecture;

- counsel must communicate with "the key players" in the litigation in order to understand how they stored information;

- counsel must take reasonable steps to monitor compliance with the "litigation hold" so that all sources of discoverable information are identified and searched; and,

- having identified all sources of potentially relevant information, a party and its counsel are under a duty to retain that information and produce information responsive to the opposing party's requests.

229 F.R.D. at 431-433.  Plaintiff argues that rather than fulfilling these obligations, Land

O'Lakes' internal processes and discovery practices "encouraged – if not virtually assured –

turning a blind eye" to discovery violations.

Land O'Lakes' first line of defense is to dismiss the *Zubulake* decisions as non-binding

precedent in the Tenth Circuit and to suggest that Judge Scheindlin's analysis is limited to the

inapposite facts in that case.  More generally, Defendants contend that they have properly met all

of their discovery obligations under Rules 26 and 34 of the Federal Rules of Civil Procedure.

Rule 26(g) requires an attorney or a party to certify that every discovery response or

objection "to the best of the signer's knowledge, information, and belief, formed after a

*reasonable inquiry,*" is consistent with the Federal Rules of Civil Procedure and warranted by

existing case law.  *See* Fed.R.Civ.P. 26(g)(2) (emphasis added).  *See St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 516 (N.D. Iowa 2000) (holding that a court should test the signer's certification under an objective standard of reasonableness, "except that it may inquire into the signer's actual knowledge and motivation to determine whether a discovery request, response or objection was interposed for an improper purpose").  "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37."  *See* Advisory Committee Notes to the 1983 Amendments to Fed.R.Civ.P. 26(g).  *See also Phinney v. Paulshock*, 181 F.R.D. 185, 203 (D. N.H. 1998) (holding that the duty under Rule 26(g) to make a reasonable inquiry "is satisfied if the investigation undertaken by the attorney *and the conclusions drawn therefrom* are reasonable under the circumstances") (emphasis in original).  An attorney is entitled to rely on the assertions of the client, provided that "the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances."  Advisory Committee Notes to the 1983 Amendments to Fed.R.Civ.P. 26(g*).  But also Metropolitan Opera Ass'n, Inc. v. Local 100 Hotel Employees and Restaurant Employees International Union*, 212 F.R.D. 178, 221-224 (S.D.N.Y. 2003) (holding that defense counsel failed to comply with Rule 26(g) by, *inter alia*, never adequately instructing defendant as to its overall discovery obligations, by failing to inquire about the client's document storage procedures and capabilities, by failing to implement a systematic procedure for document production or retention, and by failing to ask important witnesses for documents), *adhered to on reconsidertion,* 2004 WL 1943099.

Rule 34 also imposed on Defendants an affirmative duty to seek information reasonably available through Land O'Lakes' employees, agents and others subject to their control.  *See*

23

*Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988) ("once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations by . . . failing to examine records within its control"); *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (holding that a party has an obligation to conduct a reasonable inquiry in the course of responding to requests for production); *Finkelstein v. District of Columbia*, 1987 WL 14976, *6 (D.D.C. 1987) (suggesting that Rule 34 contemplates that a party will conduct a diligent search through all likely repositories of records). *See also In re Independent Service Organizations Antitrust Litigation*, 168 F.R.D. 651, 653 (D. Kan. 1996) (party cannot meet its discovery obligations by "sticking its head in the sand and refusing to look for the answer and then saying it does not know the answer;" a corporation must speak to those employees who may have responsive information).

In this case, Cache La Poudre faults Defendants for failing to identify various individuals, including former employees, who had potentially relevant documents.  Plaintiff claims to have identified at least 17 individuals who supposedly were involved in the planning, development and implementation of the PROFILE brand – including Marcy Johnson, the former Director of Marketing for Pet and Speciality Feed – but who were never interviewed or asked to produce relevant documents by Land O'Lakes.  Plaintiff apparently presumes that each of these individuals was a "key player."

Defendants reject this accusation, insisting that Land O'Lakes was not required to contact "everyone who might retain documents that Plaintiffs deems relevant, regardless of whether Plaintiff requested the document in discovery."  Land O'Lakes further argues that Plaintiff's criticism is based on the unfounded assumption that all individuals who were involved with the

PROFILE mark possessed documents responsive to a request for production.  According to

Defendants, "[u]nless there was a reasonable belief that these people held responsive documents, .

. . LOL had no duty to contact them."  Land O'Lakes further argues that it had "no general duty

to contact ex-employees whom it does not reasonably believe will have responsive documents."

For purposes of Fed.R.Civ. 34, documents are deemed to be in a party's possession,

custody or control if that party has actual possession, custody or control of the materials *"or* has

the legal right to obtain the documents on demand." *Klesch & Co, Ltd. v. Liberty Media Corp.*,

217 F.R.D. 517, 520 (D. Colo. 2003), quoting *Resolution Trust Corp. v. Deloitte & Touche*, 145

F.R.D. 108, 110 (D. Colo. 1992).  *Cf. In re NTL, Inc. Securities Litigation*, 2007 WL 241344,

*17 (S.D.N.Y. 2007) ("under Rule 34, 'control' does not require that the party have legal

ownership or actual physical possession of the documents at issue").  Under some circumstances,

a court could determine that an employer has control over documents maintained by a former

employee.  *See, e.g., In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420, 423 (N.D. Ill.

1977) (suggesting that a employer may have control over documents in the possession of a former

employee if that individual is still receiving economic benefits from the employer).  *But see*

*Miniace v. Pacific Maritime Association*, 2006 WL 335389, *2 (N.D. Cal. 2006) (denying a

motion to compel that sought production of documents in the possession of defendant's former

directors).  Some courts have required an employer to contact former employees to determine

whether they took responsive documents when they changed employment.  *See, e.g., Export-*

*Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 233 F.R.D. 338, 341-42

(S.D.N.Y. 2005) (holding that a corporation must exhaust the practical means at its disposal to

obtain documents in the possession of former employees); *McCoy v. Whirlpool Corp.*, 214 F.R.D.

637, 641 (D. Kan. 2003) (requiring defendant to contact former employees to determine whether they were in possession of responsive documents); *Lintz v. American General Finance, Inc.*, 1999 WL 619045, *4 (D. Kan. 1999) (suggesting that defendants' obligation to undertake a reasonable investigation for relevant documents included contacting former knowledgeable employees). Ultimately however, "[i]n the face of a denial by a party that it has possession, custody or control of documents, the [requesting] party must make an adequate showing to overcome this assertion." *Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004).

In this case, it appears that Land O'Lakes made no effort to determine whether former employees involved in the PROFILE mark had any responsive documents, or knew where responsive documents might be located. Even assuming, without deciding, that Defendants had an obligation to contact former employees who they had reason to believe possessed responsive documents, the sanctions that Plaintiff seeks are not appropriate under the facts in this case. The court is not inclined to penalize a party for failing to approach former employees in an effort to respond to "catch-all" or nearly indecipherable requests for production. Plaintiff makes much of Defendants' decision not to inquire whether Ms. Johnson might have retained any documents concerning the PROFILE mark. Yet, Plaintiff deposed Ms. Johnson on two separate occasions and had the ability to undertake a similar inquiry. *Cf. Stallings-Daniel v. The Northern Trust Co.*, 2002 WL 385566 (N.D. Ill. 2002) (in declining plaintiff's request for an "intrusive and wholly speculative electronic investigation into defendant's e-mail files," noted that plaintiff had the opportunity to raise her concerns about defendant's document production during her deposition of a key witness).

Plaintiff further argues that Land O'Lakes failed to properly monitor compliance with its discovery obligations by not conducting "system-wide keyword searches." *See* Plaintiff's Motion for Relief, at 17. Indeed, Plaintiff contends that Defendants had an "obligation" to undertake such keyword searches. I am not convinced that Judge Scheindlin's opinion in *Zubulake V* should be interpreted so inflexibly. Certainly, "once a 'litigation hold' is in place, a party and her counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold.'" *Zubulake v. UBS Warburg LLC*, 229 F.R.D. at 432. In discharging that responsibility, Judge Scheindlin conceded that it might not be possible for counsel to speak with every key player, and suggested as an alternative that it "may be possible to run a system-wide keyword search" to identify responsive materials. *Id.* at 432. I do not interpret Judge Scheindlin's suggestion as establishing an immutable "obligation." To the contrary, in the typical case, "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronic data and documents." *See The Sedona Principles,* at 31. To the extent that Plaintiff seeks sanctions based on a perceived "obligation" to conduct keyword searches, I will deny that request.

Plaintiff argues that Defendants failed to become familiar with their own computer system and their document retention policies and architecture. As a result of this shortcoming, Plaintiff believes that Land O'Lakes did not know where to look for relevant information. According to Cache La Poudre, Land O'Lakes or its litigation counsel also "had a duty to take possession or otherwise safeguard backup tapes to eliminate the possibility of inadvertent recycling." It appears that Mr. Janzen did not have a full understanding of his company's computer systems or the process for creating computer back-up tapes. However, Plaintiff's request for relief based on

these shortcomings sweeps too broadly.

As noted, counsel for Land O'Lakes was required to undertake a reasonable investigation to identify and preserve relevant materials in the course of responding to Plaintiff's discovery requests. Such an investigation would not automatically include information maintained on computer back-up tapes.[12] "As a general rule, [a] litigation hold does not apply to inaccessible back-up tapes . . . which may continue to be recycled on the schedule set forth in the company's policy."[13] *Zubulake v. UBS Warburg LLC*, 229 F.R.D. at 431. As of December 2006, a party responding to discovery requests must identify but need not produce electronically stored information that is not reasonably accessible because of undue burden or cost. *See* Fed.R.Civ.P. 26(b)(2)(B). One such source of information might be back-up tapes containing archived data. *See Semsroth v. City of Wichita*, 2006 WL 3913444, *5 (D. Kan. 2006) (noting that computer back-up tapes may contain information that can be located, retrieved or reviewed only with very substantial effort or expenses)*; Quinby v. WestLB AG*, 2005 WL 3453908 at *7 n. 8 ("[b]ack-up tapes are considered an inaccessible format and not readily usable"). Land O'Lakes' Director of Technology Services indicates that Land O'Lakes has approximately 400 back-up tapes for the years 2001 through 2005.

In order to recover a document or file from the back-up tapes that contains a specific word, such as "PROFILE," each tape would first have to be restored and

---

[12]*Quinby v. WestLB AG*, 2005 WL 3453908, *7 (S.D.N.Y. 2005) (describing back-up computer tapes as "'snapshots' taken at a particular point in time," and suggesting, for example, that "e-mails that are sent or received and then deleted between snapshots will not be captured on back-up tapes")

[13]Consistent with this general rule, newly enacted Rule 37(f) provides limited protection against sanctions where a party fails to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system. *See* Fed.R.Civ.P. 37(f).

> then the search conducted.  The restoration of each tape would take approximately
> 8 hours per tape, in serial fashion, since there are a limited number of restoration
> servers.  It would therefore take over 3200 man hours just to restore the
> approximately 400 back-up tapes from the last four years.

*See* Declaration of Tony Taylor, attached as Exhibit O to Defendants' Response to Plaintiff's

Motion for Relief.  Defendants claim that it would take an additional 800 man hours to search

through all restored tapes.  *Id.*

Plaintiff claims that several Land O'Lakes employees involved in the PROFILE project left

the company after the lawsuit commenced.[14]  "[T]he duty to preserve extends to those employees

likely to have relevant information – the 'key players' in the case."  *Zubulake v. UBS Warburg,*

*LLC*, 220 F.R.D. at 218.  According to Plaintiff, Defendants made no attempt to preserve or place

a litigation hold on the computer hard drives used by these employees.  Mr. Janzen acknowledged

that Land O'Lakes continued its practice of expunging the hard drives of former employees even

after this litigation commenced.  I find that such a procedure, if applied after February 24, 2004

with respect to employees who played a significant or decision-making role in the development

and implementation of the PROFILE brand, violated Defendants' obligation to preserve evidence

in this case.  *Cf. Thompson v. United States Department of Housing and Urban Development*,

219 F.R.D. at 100 (holding that defendants should have preserved e-mail records of former

employees who qualified as "key players").  Cache La Poudre has not established that Defendants

intentionally destroyed electronically stored information to deprive Plaintiff of discoverable

information.  However, the record does demonstrate that Defendants were less than thorough in

---

[14]Apart from Ms. Johnson, it is not clear who these individuals are or what role, if any,
each had the development and implementation of Defendants' PROFILE brand.  It is also unclear
whether any of these individuals were deposed in the course of this litigation.

discharging their duty to implement adequate steps to insure that discoverable information would be preserved.

A party must ensure that relevant information is retained on a continuing basis once the preservation obligation arises. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. at 431. *Cf. Danis v. USN Communications, Inc.*, 2000 WL 1694325, *32 (N.D. Ill. 2000) (warning that the duty to preserve documents in the face of pending litigation is not a passive obligation, but rather one that must be discharged actively). Judge Scheindlin acknowledged, "it may not be feasible for counsel to speak with every key player" and unrealistic to presume that counsel will necessarily succeed in identifying and searching all sources of discoverable information. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. at 432. However, counsel cannot turn a blind eye to a procedure that he or she should realize will adversely impact that search. Land O'Lakes directed employees to produce all relevant information, and then relied upon those same employees to exercise their discretion in determining what specific information to save. As Mr. Janzen said repeatedly, he and outside counsel simply accepted whatever documents or information might be produced by Land O'Lakes employees. Yet here, counsel was aware that an accessible source of information (*i.e.,* computer hard drives used by departed employees) was being eliminated as a routine practice, thereby further distancing counsel from the discovery process and his monitoring obligations. By wiping clean the computer hard drives of former employees who worked on the PROFILE project, Land O'Lakes effectively eliminated a readily accessible source of potentially relevant information. This procedure is all the more questionable given Mr. Janzen's understanding that Land O'Lakes did not keep backup tapes for computer hard drives for more than ten days. Once a "litigation hold" has been established, a party cannot continue a routine procedure that effectively ensures

that potentially relevant and readily available information is no longer "reasonably accessible" under Rule 26(b)(2)(B). *Cf. In re Cheyenne Software, Inc.*, 1997 WL 714891 (E.D.N.Y. 1997) (awarding monetary sanctions based on defendants' destruction of documents stored on computer hard drives; noted that information on those hard drives could have been copied to other relatively inexpensive storage media).

Finally, Plaintiff insists that Land O'Lakes failed to take affirmative steps to monitor compliance to ensure that all sources of discoverable information were identified and searched. In a letter sent to Plaintiff on July 7, 2005, defense counsel represented that "we have made every effort to produce all documentation and provide all relevant information that responds to [Cache La Poudre's] requests for production and interrogatories." *See* Exhibit 10 attached to Plaintiff's Motion to Compel Discovery. Defense counsel was responsible for coordinating and overseeing the client's discovery efforts. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. at 435.

In this case, Land O'Lakes's General Counsel and retained counsel failed in many respects to discharge their obligations to coordinate and oversee discovery. Admittedly, in-house counsel established a litigation hold shortly after the lawsuit commenced and communicated that fact to Land O'Lakes employees who were believed to possess relevant materials. However, by his own admission, Land O'Lakes' General Counsel took no independent action to verify the completeness of the employees' document production. As Mr. Janzen explained, he simply assumed that the materials he received were complete and the product of a thorough search. While Mr. Janzen presumed that e-mails generated by former employees would be located on shared computer drives utilized by current employees, he made no effort to verify that assumption. Without validating the accuracy and completeness of its discovery production, Land

31

O'Lakes continued its routine practice of wiping clean the computer hard drives for former employees.  Under the circumstances and without some showing of a reasonable inquiry, it is difficult to understand how Defendants' retained counsel could legitimately claim on July 7, 2005 that Land O'Lakes had "made every effort to produce all documentation and provide all relevant information."  *Cf. Wachtel v. Health Net Inc.*, 2006 WL 3538935, *8 (D.N.J. 2006) (finding that defendant's process for responding to discovery requests was utterly inadequate, in part, because defendant relied on specified business people within the company to search and produce whatever documents they thought were responsive, without verifying that the searches were sufficient).

While instituting a "litigation hold" may be an important first step in the discovery process, the obligation to conduct a reasonable search for responsive documents continues throughout the litigation.  *See* Fed.R.Civ.P. 26(e)(2) (a party is under a duty seasonably to amend discovery responses "if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  A "litigation hold," without more, will not suffice to satisfy the "reasonable inquiry" requirement in Rule 26(g)(2).  Counsel retains an on-going responsibility to take appropriate measures to ensure that the client has provided all available information and documents which are responsive to discovery requests.  *Sexton v. United States*, 2001 WL 649445 (M.D. Fla. 2001).   As the Advisory Committee Notes make clear, "Rule 26(g) imposed an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37."  In this case, I find that Defendants failed to meet this standard.

III.    *Land O'Lakes' Alleged Failure to Produce Relevant Documents*

Apart from Defendants' alleged failure to locate and preserve relevant documents and information, Plaintiff's Motion for Relief contends that Land O'Lakes knowingly failed to produce documents that were responsive to Rule 34 requests for production.  Cache La Poudre specifically cites Defendants' failure to provide: (1) projections of Land O'Lakes PROFILE sales; (2) employee notes and daytimers; (3) e-mails relating to the PROFILE trademark; (4) pages and communications from Land O'Lake's profilenutrition.com website; (5) "Income Over Ingredient Cost (IOIC)" and margin reports; (6) non-spoliation letters sent by Plaintiff's counsel; (7) PROFILE-related documents generated after the launch of the PROFILE brand; and (8) minutes of board of directors meetings.

With its Motion for Relief, Plaintiff renews its assertion that Defendants have improperly withheld "projections of Land O'Lakes PROFILE sales" that were subsumed within its requests for productions.  Citing the deposition testimony of Peter Janzen, Defendants insist that Land O'Lakes prepared sales projections on a species level or category level, rather than on a brand basis.  To the extent that Plaintiff's requests for production encompassed sales projections for "any product bearing the term 'profile' as an identifier or name," Defendants claim that such documents simply do not exist and, therefore, are not within their possession, custody or control.  While Plaintiff attempts to refute this assertion with the deposition testimony of Land O' Lakes employees Dave Hoogemoed and Mark Chenoweth, the cited deposition excerpts do not categorically refute Mr. Janzen's testimony.  On the available record, the court must accept, at face value, Defendants' representations that they did not keep projections specifically directed to PROFILE brands.  *Cf. Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (while finding implausible defendant's claim that it had produced all responsive documents in its

possession, the trial court recognized that it "must accept, at face value, a party's representation that it has fully produced all materials that are discoverable"). I will deny Plaintiff's motion to the extent it seeks sanctions relating to the non-production of documents relating to "projections of Land O'Lakes PROFILE sales."

Cache La Poudre contends that sanctions should be imposed based upon Land O'Lakes' failure to produce employee daytimers and notes by in-house counsel and staff relating to Defendants' "advice of counsel" defense. Cache La Poudre insists that employee daytimers would have been responsive to its requests for production. Plaintiff notes that Land O'Lakes employee Elden Hall testified that he retains his daytimers for 2001 and 2002, yet those documents have not been produced. Plaintiff also takes exception to Defendants' failure to produce any computerized daily planners for any current or former employee. To date, Land O'Lakes has only produced Jamie LaRue's 2001 daytimer.

Defendants dismiss Cache La Poudre's complaint regarding daytimers and attorney and staff notes as untimely and wholly speculative. As for the former argument, I do not find that Plaintiff's motion is untimely. Cache La Poudre's Motion to Compel Discovery sought, *inter alia*, production of electronic communication documents, notes and daytimer information relating to PROFILE. While the Motion to Compel was filed contemporaneously with the discovery deadline, I do not consider its filing to be untimely, particularly in the absence of any prejudice to Defendants. *Compare Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev.1999) (court denied motion to compel further responses to previously served interrogatories; if undue delay in moving to compel results in substantial prejudice to non-moving party, the court may find waiver of right to compel further responses)

Alternatively, Land O'Lakes suggests that "[t]here is no evidence that Mr. Hall's daytimer or any other daytimer contains notes relating to the Profile mark" and "no evidence that LOL did not search daytimers." I find those statements less than enlightening, particularly given defense counsel's letter of July 7, 2005, stating that he had asked Land O'Lakes to confirm "it has produced" daily planners for various named individuals, including Mr. Hall. I would have expected Defendants to review Mr. Hall's daytimers and produce any portions that refer to the PROFILE brand, or unequivocally state that no such entries exist. While a motion to compel should be based on more than mere speculation, a party responding to discovery has a duty to answer requests for production in a manner that is complete, explicit and responsive. *See, e.g., Milner v. National School of Health Technology*, 73 F.R.D. 628, 632 (E.D. Pa. 1977). *See also* Fed.R.Civ.P. 37(a)(3) (for purposes of a motion to compel, "an evasive or incomplete answer is to be treated as a failure to answer"). I will require Defendants to produce those portions of Mr. Hall's daytimers that refer to or concern the PROFILE brand, or to certify, consistent with the requirements of Rule 26(g) and Rule 34, that the Hall daytimers do not contain any relevant and responsive entries. I will also require Defendants to certify that they have undertaken a search of all reasonably accessible computerized daily planners for any current or former employee who was involved in developing or implementing the PROFILE brand. As to this category of materials, Defendants must produce those entries that refer to or concern the PROFILE brand, or certify that such entries do not exist.

The request for sanctions based on Defendants' alleged failure to produce attorney or staff notes relating to the "advice of counsel" defense is denied. I note that Plaintiff's Motion for Relief refers to these documents, almost in passing, in a single sentence with no further

35

elaboration.  Land O'Lakes claims to have had an understanding with Plaintiff that any notes or correspondence prepared by or involving Defendants' outside counsel after the start of the discovery would not by produced.  Defendants also claim that "any notes that may have existed from LOL's in-house counsel or staff that describe the reliance on the advice of counsel . . . would have been produced when LOL produced all documents in response to Plaintiff's request for production from July 22, 2005."  This court has no basis to disbelieve that statement.  However, I will require Defendants to provide Plaintiff with a list of those previously produced documents, identified by bates-number, within thirty (30) days of this Memorandum Order.  *Cf. Sonnino v. University Kansas Hospital Authority*, 220 F.R.D. 633, 640 (D. Kan.) (while accepting defendants' representation that no other responsive documents existed, the court required defendants to serve supplemental responses identifying all documents produced in response to discovery requests), *on reconsideration in part*, 221 F.R.D. 661 (D. Kan. 2004).

Cache La Poudre moves for sanctions based upon Defendants' failure to produce "e-mails relating to the Profile trademark."  Defendants insist that they have produced some 415 e-mails through the discovery process.  To the extent that Plaintiff's request is based upon Defendants' failure to produce e-mails generated prior to commencement of this lawsuit or Defendants' decision not to search back-up tapes, it will be denied for the reasons previously stated.

Plaintiff believes that sanctions should be imposed based upon Defendants' failure to produce "website pages and communications received or sent through LOL's profilenutrition website."  In particular, Plaintiff notes that during his June 2006 deposition, Peter Janzen could not recall specifically who was asked to review materials on or sent through the website.  Mr. Janzen conceded that no attempt was made to verify whether anyone actually reviewed the

website for responsive materials.  However, Land O'Lakes points out that some communications from the website actually were produced in discovery, thereby suggesting that materials on the website were reviewed as part of the discovery process.  Based upon the available record, I will not impose any sanctions with respect to this category of documents.  However, in light of Mr. Janzen's deposition testimony, I will require Defendants to provide within thirty (30) days of this Memorandum Order a declaration which describes their efforts to review the profilenutrition website for responsive materials and identifies by name and position the individuals who conducted that review.

The instant motion contends that Defendants failed to produce "Income over Ingredient Cost" and margin reports.  In support of this allegation, Plaintiff refers to its Request for Production No. 4 and cites the deposition testimony of Land O'Lakes employee Bob Bean, in which he refers to monthly IOIC reports maintained in his files.  Plaintiff apparently infers from this testimony that such reports were routinely prepared, yet claims that Defendants have only produced "isolated IOIC numbers as part of individual spreadsheets."  Cache La Poudre contends that IOIC data and reports should have been produced, even if they could only be reviewed online.

This particular dispute illustrates the parties' general approach to discovery throughout this case.  Defendants deny that they have violated any discovery obligation with respect to IOIC reports, arguing that Request for Production No. 4 sought, in pertinent part,

> all documents concerning, referencing, evidencing, resulting from, or identifying any amounts of money actually received or anticipated by each Defendant, on their behalf, or for their benefit relative to any uses of the term 'profile' as an identifier

or name of any product.[15]

Land O'Lakes objected to this request as overly broad and unduly burdensome,[16] and further complained that the request was vague with respect to the phrase "relative to any use of the term 'profile' as used in the context of this question."  Subject to those objections, Land O'Lakes indicated that it would construe the request as seeking "documents related to revenue guaranteed in connection with products bearing the name 'profile'" and would make responsive documents available for inspection.  *See* Exhibit K attached to Defendants' Response to Plaintiff's Motion for Relief.

For the reasons previously stated, I agree that Request for Production No. 4 is overly broad, particularly to the extent that it seeks "all documents concerning, referencing, evidencing, resulting from, or identifying."  Given this formulation, it would be difficult for the court or any other reader to determine what documents would be encompassed within the parameters of this request.  *Cf. Audiotext Communications v. U.S. Telecom, Inc.*, 1995 WL 18759 (D. Kan. 2001) (holding that requests for production which are worded too broadly or are too all inclusive of a general topic "require the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or

_____

[15]Plaintiff's First Set of Requests for Production broadly defined "document" to include "electronically stored data . . . and all storage from which information can be obtained either directly or indirectly by translation through detection devices or readers."  *See* Exhibit 1 attached to Plaintiff's Motion to Compel Discovery.

[16]Standing along, this claim of "undue burden" was wholly inadequate.  *See Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 109 (W.D.N.Y. 2000) ("to support an objection on the basis of burdensomeness, the objecting party must particularize the basis for the objection as generalized assertions are inadequate")

hidden, within the scope of the request"). It appears that Land O'Lakes attempted to construe Request No. 4 in a reasonable manner and agreed to produce documents consistent with that interpretation. Apparently, on August 30, 2005, counsel for Land O'Lakes indicated that his client had produced any IOIC reports maintained by Mr. Bean or other Land O'Lakes employees. In the same letter, counsel insisted that the Federal Rules of Civil Procedure did not require Defendants "to re-create the monthly IOIC reports to the extent that the information contained in the reports only exists as hard data." I agree that Defendants are not required to use electronically stored data to recreate IOIC monthly reports that do not otherwise exist. *Cf. Williams v. Sprint/United Management Co.*, 2007 WL 328791, *5 (D. Kan. 2007) (refusing to order defendants to produce documents in the particular form requested by plaintiffs or to recreate a report for the requesting party if defendant no longer has the document in that form). However, Land O'Lakes must produce relevant and responsive IOIC reports that exist in either hard copy or electronic form, subject to the limitations established in Rule 26(b)(2)(B). Based upon the foregoing, I will deny the request for sanctions as to this category of information. However, I will require Defendants to certify within thirty (30) days that they have produced all readily accessible and responsive IOIC reports existing in either printed or electronic form.

Plaintiff argues that Defendants should be sanctioned for failing to produce in discovery copies of the "non-spoliation letters" that Cache La Poudre sent to Land O'Lakes representatives or employees. In support of its request for sanctions, Plaintiff cites Request for Production Nos. 1 and 17. Plaintiff suggests that Defendants' failure to produce these letters sent by Cache La Poudre "raises doubts as to other responsive documents that may also have not been produced."

Once again, Plaintiff's request for sanctions is predicated on discovery requests that

exceed the reasonable boundaries of discovery.  Request for Production No. 1 sought all

"documents concerning, referencing, evidencing, resulting from, or identifying any

communications with, from, or to any persons relative to or actually evidencing any actual or

planned use in any manner of the term 'profile" as an identifier or name of any product."  Request

for Production No. 17 asks for "all documents reviewed by counsel for the Defendants that were

not produced to Plaintiff pursuant to Fed.R.Civ.P. 26(a)(1)."  *See* Exhibit K attached to

Defendants' Response to Plaintiff's Motion for Relief.  Admittedly, a strained interpretation of

these expansive Requests might encompass Plaintiff's non-spoliation letters sent to Land O'Lakes.

However, the court is loath to impose sanctions that might be misconstrued as a tacit

endorsement of poorly drafted discovery requests.  No other action by this court is required to

further the interests of justice.

   Plaintiff contends that Defendants should be sanctioned for failing to produce "Profile-

related documents subsequent to the launch of the Profile brand."  Here, Plaintiff cites the

deposition testimony of Bob Bean, who testified that he was requested to produce "information

regarding Profile from, you know, the time it was began [sic] through and shortly after its initial

introduction into the marketplace."  Cache La Poudre notes that its requests for production

sought relevant documents without limitation as to time.  In view of Mr. Bean's testimony,

Plaintiff wonders "just what LOL employees were instructed to produce, from whom they

received instruction and guidance, and what they understood their instructions to be."

   I permitted Plaintiff to take a Rule 30(b)(6) deposition to explore the procedures Land

O'Lakes took to identify, preserve and produce responsive documents.  Mr. Janzen testified that

he instructed employees to produce all documents responsive to discovery requests served in the

PROFILE litigation.  While the court has expressed concern over Mr. Janzen's efforts to monitor

compliance with these instructions, I am not persuaded that Plaintiff has raised an independent

basis for sanctions based upon suspicions predicated on Mr. Bean's deposition testimony.

Defendants claim that they have produced in discovery documents relating to PROFILE after its

introduction into the marketplace and through the period leading up to the decision to switch

from the PROFILE brand.  It appears that Defendants have produced over 50,000 pages of

documents in discovery.  On this record, the court will deny Plaintiff's request for sanctions, as it

appears to be based more on speculation than fact.

Finally, Cache La Poudre requests sanctions for Defendants' alleged failure to produce

minutes from meetings of Land O'Lakes Board of Directors.  Plaintiff's Request for Production

No. 18 sought

> all documents concerning, referencing, evidencing, resulting from, transcribing,
> videoing, recording, summarizing, establishing minutes for, or identifying any
> communications at any shareholder, director, officer, or management meeting
> relative to any uses of the term "profile" as an identifier or name of any product.

See Exhibit K attached to Defendants' Response to Plaintiff's Motion for Relief.  Defendants

objected to this request as vague, based upon the term "management meeting."  Plaintiff's

Requests for Production, served on February 22, 205, sought, inter alia, "copies of all minutes,

and other documents relating to, evidencing, showing, concerning or involving all Board of

Directors' meetings held by LOLFF from January 1, 2001 to the present."  See Exhibit 39

attached to Plaintiff's Motion for Relief.

Plaintiff believes sanctions should be imposed because "to date, no meeting minutes or

notes from or presentations for any Board meetings have been produced."  Cache La Poudre's

41

suspicions also have been triggered by Ms. Johnson's testimony that she gave a PROFILE presentation to Land O'Lakes' Feed Advisory Board in either late 2001 or early 2002, and by a statement by Defendants' counsel indicating that one Land O'Lakes Farmland Feeds Board meeting addressed the PROFILE matter.

Defendants respond that Cache La Poudre's suspicions are unfounded and inconsistent with the discovery request cited in its Motion for Relief. According to Defendants, the Feed Advisory Board is comprised of co-op members. Land O'Lakes argues that this advisory panel is not subsumed within a request for production directed to "shareholder, director, [or] officer" meetings and outside the vague reference to "management meetings." This interpretation of Request No. 18 is not unreasonable. Mr. Janzen also testified during his Rule 30(b)(6) deposition that he personally reviewed all the minutes from meetings of Land O'Lakes Board of Directors and found "no minutes that relate to the Profile matter." Unfortunately, the court is left to wonder whether Mr. Janzen's reference to the "Profile matter" broadly encompasses any Board discussion of the PROFILE brand or was more narrowly confined to the pending litigation. Plaintiff's counsel did not ask Mr. Janzen to clarify this response during the deposition. If Mr. Janzen meant to suggest that the PROFILE brand was never discussed during any Land O'Lakes Inc. or Land O'Lakes Farmland Feed LLC Board meeting during or after 2001, then I can understand Plaintiff's incredulity. While the court will not impose sanctions based on mere conjecture, I will require Defendants to certify, consistent with the requirements of Rule 26(g) and Rule 34, that they have conducted a reasonable search for all minutes of Land O'Lake, Inc. and Land O'Lake Farmland Feed LLC Board of Directors meetings that evidence discussions or presentations relative to the PROFILE brand. Based upon that reasonable search, Defendants

42

must either supplement their discovery responses pursuant to Fed.R.Civ.P. 26(e)(2) or certify that such responsive documents are not within their possession, custody or control.

IV.    Sanctions

Plaintiff's motion requests various forms of relief, including appointment of a special master charged with the responsibility to ensure Defendants' full compliance with discovery obligations; additional depositions at Defendants' full cost and expense; leave to submit proposed adverse findings at trial, plus an award of fees, costs, and fines that the court deems appropriate. Based on the foregoing analysis, the court will deny most of these requests.

I find that Cache La Poudre's request for leave to submit proposed adverse findings at trial is not supported by prevailing Tenth Circuit precedent. In *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997), the Tenth Circuit held that "the bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction." In the same decision, the Tenth Circuit further reasoned that no adverse inference should arise where the destruction of a document resulted from mere negligence, because only bad faith would support an "inference of consciousness of a weak case." *Id.*[17]

> 'Bad faith' is the antithesis of good faith and has been defined in the cases to be when a thing is done dishonestly and not merely negligently. It is also defined as that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest.

*Attorneys Title Guaranty Fund v. Goodman*, 179 F. Supp.2d 1268, 1277 (D. Utah 2001). *Cf.*

---

[17]The Second Circuit has held that an adverse inference instruction may be based a showing of negligence, rather than bad faith. *See, e.g., Residential Funding Corp. v. Degeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002). This court is bound to follow Tenth Circuit precedent.

43

*United States v. Heiser*, 2006 WL 1149254, *11 (M.D. Pa. 2006) (holding that "'bad faith' with respect to destruction of evidence requires more than mere negligence, it requires ill-will towards [the defendant] or a conscious effort to frustrate his defense"). Here, the court does not find that Defendants' failure to preserve relevant documents was the product of bad faith. *Cf. Richins v. Deere and Company*, 231 F.R.D. 623, 626 (D.N.M. 2004) (the evidence upon which the movant relies to show bad faith must be more than conjecture or speculation; the movant must present evidence that would support an inference that a party actually suppressed or withheld evidence because they were conscious of a weakness in their case). *See also Crandall v. City and County of Denver*, 2006 WL 2683754, *2 (D. Colo. 2006) (declining to create a presumption in favor of spoliation whenever a moving party can prove that records that might have contained relevant evidence have been destroyed).

In lieu of a dispositive sanction or an adverse inference instruction, the court may impose a monetary sanction where there is a finding of spoliation. *See Phoenix Four, Inc. v. Strategic Resources Corp.*, 2006 WL 1409413, * 9 (S.D.N.Y. 2006) (even where the court denies other forms of relief, it may still impose monetary sanctions for spoliation); *Travelers Property Casualty of America v. Pavilion Dry Cleaners,* 2005 WL 1366530. * 4 (D. N.J. 2005) (recognizing that monetary sanctions may be an appropriate sanction to punish the spoliator and to deter similar conduct). Where a party to litigation has failed to preserve relevant materials,

> an award of costs serves both punitive and remedial purposes: it deters spoliation
> and compensates the opposing party for the additional costs incurred. Such
> compensable costs may arise either from the discovery necessary to identify
> alternative sources of information or from the investigation and litigation of the
> document destruction itself.

*Turner v. Hudson Transit Lines*, 142 F.R.D. 68, 78 (S.D.N.Y. 1991) (internal citations omitted).

*See also United States v. Philip Morris USA, Inc.*, 327 F. Supp.2d 21, 26 (D.D.C. 2004) (noting

that a monetary sanction may be particularly appropriate where the court lacks sufficient

information to fashion a proportional evidentiary sanction that would accurately target the

discovery violation).

While adverse findings or a dispositive sanction are not warranted in this case, some

sanction is appropriate.  In a non-spoliation context, the Tenth Circuit has held that the trial court

should weigh several factors in determining an appropriate sanction:  (1) the degree of actual

prejudice to the moving party; (2) the amount of interference with the judicial process; (3) the

culpability of the non-moving party; (4) whether the court warned the party in advance that a

dispositive sanction would be likely for non-compliance, and (5) the efficacy of lesser sanctions.

*See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).  *See also Gates Rubber Co. v*

*Bando Chemical Industries, Ltd.,* 167 F.R.D. 90, 101 (D. Colo. 1996).  Where a non-dispositive

sanction is not at issue, only the first three factors are applicable.  *See Markham v. National*

*States Insurance Co.*, 2004 WL 3019308, *12 (W.D. Okla. 2004) (a showing of willfulness or

bad faith is not required where a non-dispositive sanction is imposed).  In considering these

factors, the court also remains mindful of the admonition that its inherent power to sanction must

be exercised with restraint and discretion, in order to ensure that any sanction is proportionate to

the offending conduct.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

I do not find that Cache La Poudre's ability to litigate its claims has been substantially

prejudiced by Defendants' failure to implement and monitor an adequate record preservation

program.  However, Defendants' failure to preserve potentially relevant and responsive

information by wiping clean computer hard drives and counsels' failure to properly monitor the

discovery process has interfered with the judicial process.  *Cf. Danis v. USN Communications, Inc.*, 2000 WL 1694325 (N.D. Ill. 2000) (imposing monetary sanctions based upon defendant's failure to implement adequate steps to discharge its obligation to preserve documents and information that might be discoverable, including defendant's failure to modify its system of purging e-mails of terminated employees to ensure that potentially discoverable documents were preserved).  Moreover, Land O'Lakes' failure to fully comply with their discovery obligations has forced Plaintiff to incur additional litigation expenses.  *Cf. Starlight International Inc. V. Herlihy*, 186 F.R.D. 626, 648 (D. Kan. 1999) (delay and mounting attorney's fees can equate to prejudice).

Defendants' failure to comply with the requirements of Rule 26(g) provides an alternative basis for imposing sanctions.  *Cf. National Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987) (the consistent failure of defendant and its counsel to conduct reasonable factual inquiries prior to filing discovery responses are sanctionable under Rule 26(g) where the omitted documents and information should have been disclosed).  Rule 26(g)(3) provides, in pertinent part, that appropriate sanctions shall be imposed by the court either on its own motion or on the motion of a party, "[i]f without substantial justification a certification is made in violation" of Rule 26(g).  *See also St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. at 516 (sanctions under Rule 26(g)(3) do not require a finding of bad faith).  "Where a violation of Rule 26(g) occurs, imposition of sanctions is mandatory." *Gucci America, Inc. v. Costco Wholesale Corp.*, 2003 WL 21018832, *2 (S.D.N.Y. 2003).  However, Rule 26(g)(3) gives the court discretion to impose an "appropriate" sanction, which may not necessarily include an award of attorneys fees and costs.

After carefully considering the factual record and the arguments of counsel, I conclude that a monetary sanction is appropriate in this case. Cache La Poudre incurred legal expenses in connection with the pending motion that would not have been required had Land O'Lakes and it counsel undertaken a reasonable investigation to identify and preserve relevant materials, and then taken affirmative and effective steps to monitor compliance with discovery obligations. However, it bears repeating that Plaintiff has prevailed on its Motion for Relief to a limited extent. *Compare* Fed.R.Civ.P. 37(a)(4) (suggesting that a court should apportion in a just manner the reasonable expenses incurred by the parties where a motion to compel is granted in part and denied in part). I will require Defendant Land O'Lakes to pay Cache La Poudre the sum of $5,000 to reimburse some of the legal fees and expenses incurred in taking Mr. Janzen's deposition in Minneapolis, Minnesota and preparing the instant Motion for Relief from Discovery Violations. While Plaintiff almost certainly incurred fees and costs of more than $5,000 in having counsel travel to and from Minnesota, attend the Janzen deposition, and prepare a 40-page motion, the court finds that the fees and costs awarded in this Memorandum Order are appropriate under the circumstances of this case and consistent with the objectives under Rule 26(g) and Rule 34. I will also require Defendants to reimburse Plaintiff for court reporter fees and transcript costs associated with the June 15, 2006 deposition of Mark Janzen.

Plaintiff's Motion for Relief asked the court to "consider and impose such fines," payable to the Clerk of the Court, as I deem appropriate based upon specific conduct by Land O'Lakes and its counsel. Cache La Poudre's Motion offered no legal analysis to support such a request. My own research revealed several cases in which fines were imposed by the court as a result of a party's sanctionable conduct. *See, e.g., United States v. Philip Morris USA, Inc.*, 327 F. Supp.2d

at 26 (requiring defendant to pay a monetary fine of $2,750,000 for its non-compliance with

company document retention policies and a court order addressing evidence preservation);

*Bradley v. Sunbeam Corporation*, 2003 WL 21982038 (N.D. W.Va. 2003) (recommending that

defendant be fined $200,000 for its abuse of the judicial process as a result of spoliation); *Danis v.*

*USN Communications, Inc*., 2000 WL 1694325 (N.D. Ill. 2000) (imposing a monetary sanction

of $10,000 for failing to take adequate steps to preserve documents and information that might be

discoverable); *In re Prudential Insurance Company of America Sales Practices Litigation*, 169

F.R.D. 598, 616-17 (D. N.J. 1997) (after finding that defendant's document destruction hindered

the administration of justice, required defendant to pay $1,000,000 to the Clerk of District Court);

*National Association of Radiation Survivors v. Turnage*, 115 F.R.D. at 558-59 (imposing a fine

of $15,000 "for the unnecessary consumption of the court's time and resources" as a result of

defendant's "reckless and irresponsible abrogation of its responsibility to assure full compliance

with discovery requests").   Most of these decisions involved violations of a formal discovery

order entered by the court, a factor which is not present in this case.   Moreover, the Tenth Circuit

has held a fine that is neither compensatory nor avoidable by complying with a court order is

criminal in nature and, therefore, subject to the procedural safeguards governing a criminal

contempt order.   *See Law v. National Collegiate Athletic Association*, 134 F.3d 1438, 1442-1444

(10th Cir. 1998) (reversing a sanction order that defendant and its counsel to pay reasonable fees

and expenses incurred by plaintiffs, plus a 25% surcharge, for their failure to permit discovery).

*See also Bradly v. American Household, Inc*., 378 F.3d 373, 377-80 (4th Cir. 2004) (finding that

$200,000 fine imposed for discovery violations was effectively a criminal contempt sanction that

had been imposed without necessary procedural protections).[18]  In light of the monetary sanctions awarded to Cache La Poudre through this Memorandum Order, I find that no other fines or monetary sanctions are warranted.

## CONCLUSION

For the foregoing reasons, the court will grant, in part, Plaintiff Cache La Poudre Feed, LLC's Motion for Relief from Discovery Violations.  While the court finds that many of Plaintiff's contentions are unfounded, some relief is warranted based upon Defendants' failure to fully discharge their discovery obligations.  Accordingly, the Court orders that within thirty (30) days of this Memorandum Order, Defendant Land O'Lakes shall pay Plaintiff Cache La Poudre, the sum of $5,000.  Defendant Land O'Lakes is also hereby ordered to reimburse Plaintiff for the actual court reporter fees and transcript costs associated with the June 15, 2006 deposition of Peter Janzen.  Should Defendants file an objection to this portion of the Memorandum Order, pursuant to Fed.R.Civ.P. 72(a), I will stay compliance with the foregoing sanctions pending a decision by the District Court.

In addition, the court separately orders that within thirty (30) days of this Memorandum Order:

1.      Defendants shall produce those portions of Mr. Hall's daytimers that refer to or concern the PROFILE brand, or certify, consistent with the requirements of Rule 26(g) and Rule 34, that the Hall daytimers do not contain any relevant and responsive entries.  Defendants shall

---

[18]To the extent that the court has the authority to impose monetary sanctions intended to compensate the court for "excess court time" expended in deciding the parties' discovery dispute, I would not attempt to distinguish between inappropriate conduct by each party that differs only by degree.  *Compare Eisenberg v. University of New Mexico*, 936 F.2d 1131 (10th Cir. 1991).

also produce relevant and responsive entries on reasonably accessible computerized daily planners maintained by any current or former employee involved in developing or implementing the PROFILE brand, or certify that they have undertaken a search and such materials do not exist.

2.      Defendants shall identify, by bates number, Land O'Lakes attorney or staff notes relating to the "advice of counsel" defense previously provided in discovery.

3.      Defendants shall provide Plaintiff with a declaration describing all of their efforts to review the Land O'Lakes profilenutrition.com website for responsive materials and identifying by name and position the individuals who conducted that review.

4.      Defendants shall certify that they have searched for and have produced all reasonably accessible IOIC reports existing in either printed or readily accessible electronic form.

5.      Defendants shall certify, consistent with the requirements of Rule 26(g) and Rule 34, that they have conducted a reasonable search for all minutes of Board of Directors meeting that concern or evidence discussions or presentations relative to the PROFILE brand.  Based upon that reasonable search, Defendants must either supplement their discovery responses pursuant to Fed.R.Civ.P. 26(e)(2) or certify that such responsive documents are not within their possession, custody or control

In all other respects and as to all other forms of requested relief, Plaintiff's motion is denied.

DATED at Denver, Colorado, this 2nd day of March, 2007.

BY THE COURT:


*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge