IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  04-cv-329-WYD-CBS

CACHE LA POUDRE FEEDS, LLC, a Colorado limited liability company,

    Plaintiff,

v.

LAND O' LAKES, INC, a Minnesota corporation;

    Defendants.
_____

**ORDER**
_____

**I.     INTRODUCTION**

Plaintiff, Cache La Poudre Feeds, LLC, filed this case against the Defendant, Land O' Lakes, Inc. because of Defendant's alleged illegal use of Plaintiff's trademark, PROFILE, to offer the same or substantially the same goods as those of the Plaintiff, i.e., animal feeds.  The complaint accused the Defendant of violating the federal trademark laws as well as applicable laws of the state of Colorado.

A two-week jury trial commenced on Monday, June 25, 2007.  Following its deliberation, the jury, on July 10, 2007, returned a verdict for the Plaintiff on the following claims: (1) common law trademark infringement; (2) federal unregistered trademark infringement; (3) federal registered trademark infringement; (4) unfair competition - false designation of origin; (5) unfair competition - misappropriation; (6) state trademark infringement; and (7) deceptive trade practices.  Specifically, the jury awarded the Plaintiff $160,378 in actual damages for the federal infringement claims

and $83,327 in corrective advertising. The jury also awarded the Plaintiff $16,350 in actual damages for the unfair competition - false designation of origin claim, $20,792 in actual damages for the unfair competition - misappropriation claim, and $250,000 in actual damages for the state trademark infringement claim. The jury further awarded the Plaintiff $20,792 in punitive damages. Additionally, the jury found that Defendant's infringement was willful. The jury also entered a profits award, in Plaintiff's favor, in the amount of $14,648,297, which was a nonbinding recommendation or advisory verdict.

Based on my prior Order dated June 6, 2007 (docket #393), the jury's award of Defendant's profits is advisory subject to the Court's weighing of the equities under applicable Tenth Circuit law. The parties each filed briefs requesting that I adjust the jury's advisory award of profits. Plaintiff urges that the advisory verdict is inadequate while Defendant contends that it is excessive. Therefore, in this Order, I address the applicable legal standards, weigh the equities and decide the appropriate award of profits that should be entered. After reviewing all of the relevant pleadings, considering the arguments from both parties at the hearing on August 27, 2007, and weighing the equities, I find that the jury's advisory verdict of $14,648,297 is excessive and must be reduced.

## II.  LEGAL STANDARD

The Lanham Act permits the Court to make an award of defendant's profits subject to the principles of equity. 15 U.S.C. § 1117(a). The statute reads in part:

>   (a) Profits; damages and costs; attorney fees
>
>   When a violation of any right of the registrant of a mark

> registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. . .

15 U.S.C. § 1117(a).

The Tenth Circuit has stated that "an award of profits under the Lanham Act is truly an extraordinary remedy and should be tightly cabined by principles of equity." *Western Diversified Servs., Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1274 (10th Cir. 2005). The Tenth Circuit further stated that a finding of willfulness is required to support an award of profits. *Id.* at 1273. However, "[e]ven with a finding of willfulness, a court may still exercise its discretion to reduce or even eliminate a profit award in the name of fashioning an equitable remedy to meet the needs of each case." *Id.* "This is accomplished by 'carefully weighing the equities on both sides of the scale to determine whether, in [the] district court's judgment and within its wide discretion, the plaintiff may receive a portion of the infringing defendant's profits.' Thus, an award of

profits involves a two-step process: (1) a finding of willfulness or bad faith; and (2) a weighing of the equities." *Id.; Bishop v. Equinox Int'l Corp.,* 256 F.3d 1050, 1055-56 (10th Cir. 2001)("*Bishop II*").

However, it should be noted that the Tenth Circuit cautioned that "[a]n accounting of profits is not automatically granted upon a showing of infringement. Rather, the propriety of such relief is determined by equitable considerations. Consequently, the district court has wide discretion to fashion an appropriate remedy." *Bishop II*, 256 F.3d at 1055 (internal citations omitted). The Tenth Circuit further instructs that the district court shall "fashion equitable remedies to meet the individual needs of each case, carefully weighing the equities on both sides of the scale to determine whether, in that district court's judgment and within its wide discretion, the plaintiff may receive a portion of the infringing defendant's profits." *Id.*

**III.   ANALYSIS**

Turning to my analysis, in the case at hand, the first step in the process as set forth by the Tenth Circuit in both *Western* and *Bishop II* has been satisfied in that the jury found that the Defendant's conduct was willful. Therefore, I must decide the second step; i.e. weigh the equities on the record before me. In weighing the equities, I considered the testimony and exhibits presented at trial, the reasonable inferences to be drawn from such evidence, the post trial briefs filed by the parties on the issue of profits and oral argument presented at the August 27, 2007 hearing.

I infer from the exhibits and testimony of Plaintiff's expert, Cate Elsten, that the jury predicated its profits verdict of $14,648,297 on her testimony and calculations

since the award was the identical figure noted in her chart, Trial Ex. 189, for Defendant's gross profits. This figure represented the Defendant's total gross profit in thirty states after subtracting the IOIC (income over ingredient costs) and the total cost of goods sold. At trial, Cate Elsten testified that she did not consider other offsets to the gross profits number because the Defendant had not provided adequate documentation for further expense reductions.

Defendant argues that it is not equitable for Plaintiff to recover profits earned in states where it conducted no business and developed no meaningful reputation or goodwill for three reasons: (1) Plaintiff cannot satisfy the *Western Diversified* standard, as it is impossible for Defendant to have intended to benefit from goodwill, or harm to Plaintiff's goodwill, in places where Plaintiff did not exist; (2) Defendant's profits in states outside of Plaintiff's area of goodwill are not attributable to the use of Plaintiff's trademark; (3) there is no likelihood of confusion in areas where Plaintiff conducted no business or had no reputation.

Second, Defendant argues that its profits in states where Plaintiff had no presence in the market cannot be attributable to the infringement. "Where Plaintiff has no sales and no presence in the market, consumers have no realistic opportunity to purchase its products, and thus cannot suffer from confusion as between the parties. There is no infringement in those areas and no basis for recovering profits, any more than there was any basis for undertaking corrective advertising to correct confusion in states where plaintiff did not operate in. *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375 (10th Cir. 1977)." (Def's. Br. at 9.) Defendant also

cites *Bishop II*, 256 F.3d at 1055 for support.  In *Bishop II*, the Tenth Circuit states:

> [T]he district court found that the plaintiff did not lose any sales due to [Defendant] Equinox's infringing use of the trademark, that Equinox did not benefit from any goodwill associated with the disputed trademark, and that there was no actual consumer confusion or deception caused by Equinox's infringing use of the trademark. These factors are relevant not just in demonstrating that [Plaintiff] suffered no actual damages, but also in considering whether an award of a portion of Equinox's profits is appropriate either to prevent unjust enrichment or to deter future willful infringement.

*Bishop II*, 256 F.3d at 1055 (citations omitted).  Therefore, to award profits where a Plaintiff has no meaningful goodwill would be incompatible with the stated rationales for permitting an accounting of profits, unjust enrichment and deterrence.

Defendant argues that it was not unjustly enriched by the wrongful use of Plaintiff's PROFILE name where the PROFILE name had no prior significance to consumers.  Further, with respect to deterrence, the Tenth Circuit quoted the D.C. Circuit in *Bishop v. Equinox Intern. Corp*, 154 F.3d 1220, 1223 (10th Cir. 1998)("*Bishop I*") and stated that "deterrence is too weak and too easily invoked a justification for the severe and often cumbersome remedy of a profits award, and therefore, deterrence alone cannot justify such an award."[1]

---

[1] Defendant also argues that the jury's advisory profit award should be reduced as it is over sixty times greater than the amount of Plaintiff's actual damages.  Defendant cites two Supreme Court cases where the Supreme Court disallowed on due process grounds such disproportionate recoveries even when they were intended to be punitive.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)(invalidating $145 million punitive damage award on $1 millions compensatory judgment, holding that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety"); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 581 (1996)(invalidating $2 million punitive damage award on compensatory verdict of $4,000, noting that the ratio of punitive to actual damages should rarely exceed 10 to 1).  I am not persuaded by this argument as these cases concern punitive damages, not the award of profits applying equitable principles.  Thus, I reject this argument.

I find this argument persuasive and find that allowing the Plaintiff to recover Defendant's profits in states where there was no evidence of actual sales or infringement would result in a windfall to the Plaintiff. In other words, weighing the equities as to an award of profits in states where the parties did not compete and where the Plaintiff had no sales of PROFILE products leads me to conclude that profits from all such states should be excluded.

Conversely, as I weigh the equities, I find that the Plaintiff should be awarded Defendant's profits in states where the parties had competing sales of PROFILE products even if the Plaintiff's sales were minimal in some of the states. Further supporting an award of profits is the fact that the jury found that Defendant wrongfully infringed the Plaintiff's PROFILE mark and that such infringement was willful. Thus, equitable principles require that Defendant be disgorged of the profits it received from the sale of PROFILE products in the states where the parties directly competed during the relevant time period. The critical issue is what award of profits will fairly compensate the Plaintiff while not punishing the Defendant. These are the equities I must weigh while considering the facts and circumstances of this case.

In my review of the record, I find that the evidence at trial reveals that there were nine states where Plaintiff had actual sales (albeit minimal in some states). Exhibit A-70 shows that Plaintiff had actual sales of the PROFILE product in the following states: (1) Arizona; (2) Colorado; (3) Kansas; (4) Montana; (5) Nebraska; (6) Texas; (7) South Dakota; (8) Utah; and (9) Wyoming. In each of these states, the Defendant sold competing PROFILE products. The equities, therefore, weigh in favor of a profits

award related to the profits received by Defendant from these states. Also, it would be inequitable for the Defendant to profit from the wrongful use of Plaintiff's trademark in a state where there was any presence by Plaintiff.

After weighing the equities and considering the evidence, I find that the Plaintiff had a presence in nine states for purposes of an appropriate profits award. The evidence also revealed that the Defendant sold PROFILE product in thirty states nationwide during the relevant time period. Thus, I hereby reduce the profit award of $14,648,297, based on profits from thirty states, to reflect a proportionate award for the nine states where the parties were direct competitors. After the reduction, my profits award is $4,394,489.13. Specifically, I arrived at this number by dividing Defendant's total profits of $14,648,297 by thirty states to arrive at an average profit of $488,276.57 per state. Then, I multiplied $488,276.57 by the nine states, which results in an award of $4,394,489.13. I find that, in my discretion, this amount is a fair and equitable remedy that properly compensates the Plaintiff for the Defendant's wrongful infringement of the Plaintiff's mark. This award further serves as a deterrent to the Defendant, while not rising to the level of a punitive profit award. *See* 15 U.S.C. § 1117(a); *Western Diversified*, 427 F.3d at 1272 (stating that the Tenth Circuit does not permit punitive profits awards).

**IV.    CONCLUSION**

Based on the foregoing, it is

ORDERED that Judgment shall enter consistent with the jury's verdict of July 10, 2007, for all damages, except the advisory profit award. It is

FURTHER ORDERED that the jury's advisory profit award is reduced from $14,648,297 to **$4,394,489.13**, and Judgment shall enter in that amount. It is

FURTHER ORDERED that Plaintiff's Motion to Increase Jury Award Under 15 U.S.C. § 1117 (docket #467), filed July 25, 2007, is **DENIED.** It is

FURTHER ORDERED that both parties shall contact Magistrate Judge Shaffer's chambers within seven days of this Order to schedule a settlement conference.

Dated:  August 30, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge