IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  04-cv-00329-WYD-CBS

CACHE LA POUDRE FEEDS, LLC, a Colorado limited liability company,

      Plaintiff,

v.

LAND O' LAKES, INC, a Minnesota corporation;

      Defendants.

_____

**ORDER**
_____

## I.    <u>Introduction</u>

Plaintiff, Cache La Poudre Feeds, LLC, filed this case against the Defendant, Land O' Lakes, Inc. because of Defendant's alleged illegal use of Plaintiff's trademark, Profile, to offer the same or substantially the same goods as those of the Plaintiff, i.e., animal feeds.  The complaint accused the Defendant of violating the federal trademark laws as well as applicable laws of the state of Colorado.

A two-week jury trial commenced on Monday, June 25, 2007.  Following its deliberation, the jury, on July 10, 2007, returned a verdict for the Plaintiff on the following claims: (1) common law trademark infringement; (2) federal unregistered trademark infringement; (3) federal registered trademark infringement; (4) unfair competition - false designation of origin; (5) unfair competition - misappropriation; (6) state trademark infringement; and (7) deceptive trade practices.  Specifically, the jury awarded the Plaintiff $160,378 in actual damages for the federal infringement claims

and $83,327 in corrective advertising. The jury also awarded the Plaintiff $16,350 in actual damages for the unfair competition - false designation of origin claim, $20,792 in actual damages for the unfair competition - misappropriation claim, and $250,000 in actual damages for the state trademark infringement claim. The jury further awarded the Plaintiff $20,792 in punitive damages. Additionally, the jury found that Defendant's infringement was willful. The jury also entered a profits award, in Plaintiff's favor, in the amount of $14,648,297, which was a nonbinding recommendation or advisory verdict.

On August 31, 2007, after reviewing all of the relevant pleadings, considering the arguments from both parties, and weighing the equities, I reduced the jury's advisory verdict to $4,394,489.13. Judgment was entered against the Defendant on September 21, 2007 in the amount of $4,925,336.13 in compensatory damages and in the amount of $20,792.00 in punitive damages. The Judgment also ordered that pre-judgment interest shall accrue on all compensatory damages in the amount of $4,925,336.13 at the legal rate of 8.0% per annum from the date the action accrued until the date of entry of judgment. The Judgment further stated that post-judgment interest shall accrue on the total amount of $4,946,128.13, plus pre-judgment interest, at the legal rate of 4.15% per annum from the date of entry of judgment.

After the entry of judgment, the parties filed the following post-trial motions: (1) Plaintiff's Motion to Enhance Actual and Punitive Damages (docket #485), filed October 15, 2007; (2) Defendant's Motion to Reduce the Judgment Against It of Actual Damages to $260,055 (docket #486), filed October 15, 2007; (3) Defendant's Motion to Reduce Award of Pre-judgment Interest (docket #487), filed October 15, 2007; (4)

Plaintiff's Motion for Attorney's Fees and Expenses (docket #488), filed October 15, 2007; and (5) Plaintiff's Motion for Entry of Permanent Injunction (docket #489), filed October 15, 2007. After reviewing all of the relevant pleadings, considering the arguments from both parties at the hearing on January 16, 2008, and applying the appropriate legal standards, for the reasons stated on the record and set forth below, I find that the post-trial motions should be granted in part and denied in part.

## II. Defendant's Motion to Reduce the Judgment Against It of Actual Damages to $260,055 (docket #486), filed October 15, 2007

In this motion, the Defendant argues that the Court should reduce the amount of actual damages from $4,925,336 to $4,654,544.13. Defendant argues that Plaintiff presented evidence at trial of lost profits of $176,728 and corrective advertising of $83,327, for a total damage claim of $260,055. (See Tr. at 2118-19; Ex. 169 at 19). As part of its damage award for federal trademark infringement, the jury awarded all of the corrective advertising Plaintiff sought. (See Verdict Form, Question 8). The jury also awarded the full amount of Plaintiff's claimed lost profits, dividing the amount between the damages for federal trademark infringement (Claims 1-3) and for unfair competition – false designation of origin (Claim 4). (See Verdict Form, Questions 7, 12.2). This exhausted all of Plaintiff's damages evidence, yet the jury went on to award another $250,000 for state trademark infringement (Claim 6), as well as $20,792 for unfair competition - misappropriation of business value. (See Verdict Form, Questions 14, 18). Defendant challenges these two awards because they are beyond any amount reasonably supported by the record and constitute an impermissible second or double

recovery for the same injuries already compensated by Claims 1-4.

In response, Plaintiff first argues that if the Court construes this motion as a remittitur, the Plaintiff must be given the option of a new trial in lieu of remitting a portion of the jury's award. *O'Gilvie v. Int'l Playtex*, 821 F.2d 1438, 1448 (10th Cir. 1987). Second, Plaintiff argues that the jury received a large amount of different quantitative evidence from both parties. Defendant's argument is speculation as to how the jury arrived at differing amounts. Plaintiff finally argues that since the elements of the claims of federal and state trademark infringement and unfair competition are not identical, the jury's award does not constitute double recovery.

Turning to my findings, under federal law, the Court may grant remittitur or a new trial on the grounds that the damages are excessive. *See Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998). However, "defendants bear the 'heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence.'" *Id.* (quoting *Campbell v. Bartlett*, 975 F.2d 1569, 1577 (10th Cir. 1992) (internal quotation marks omitted). And "'absent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Id.* Under Colorado law, remittitur is appropriate where the court finds that the damage award is manifestly excessive in light of the evidence presented. *Jagow v. E-470 Public Highway Authority*, 49 P.3d 1151, 1157 (Colo. 2002). For the reasons stated on the record, I do not find that the jury's verdict was excessive or inadequate, thus remittitur is not appropriate.

With respect to the issue of double recovery, in this case, the jury awarded the Plaintiff $160,378 in actual damages for the federal infringement claim, $250,000 for the state trademark infringement claim, $16,350 in actual damages for the unfair competition - false designation of origin claim, and $20,792 in actual damages for the unfair competition - misappropriation claim. The Tenth Circuit has held that "[w]here a jury awards duplicate damages, the court, either *sua sponte* or on motion of a party, should reduce the judgment by the amount of the duplication." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1235 (10th Cir. 2000) (citing *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1459 (10th Cir. 1997)). "It is well established that 'double recovery is precluded when alternative theories seeking the same relief are pled and tried together.'" *Mason*, 115 F.3d at 1459 (citing *Clappier v. Flynn*, 605 F.2d 519, 530 (10th Cir. 1979)). The Tenth Circuit has further stated that "'[i]f a federal claim and a state claim arise from the same operative facts, and seek identical relief, an award of damages under both theories will constitute double recovery.'" *Id.* (citing *U.S. Industries, Inc. v. Touche Ross & Co.,* 854 F.2d 1223, 1259 (10th Cir. 1988).

Guided by the case law, in determining whether there has been an impermissible double recovery of damages, my inquiry focuses on whether the damages issue arose from the same set of operative facts. The evidence presented at trial demonstrated that Plaintiff based both its federal and state trademark infringement claims and its unfair competition claims on Defendant's unlawful use of the Plaintiff's trademark name, Profile, and the resulting sales of Defendant's Profile products. At

trial, Plaintiff presented evidence of lost profits and corrective advertising totaling $260,055. Cate Elsten, Plaintiff's expert, testified at trial that Plaintiff's lost profits through 2004 totaled $176,728. (Tr. at 1336; Ex. 169 at 23.) Cate Elsten further testified that Defendant's advertising in relevant states to be $333,307. (Tr. at 1370-71, 1458.) Based on the law set forth in *Big O Tires, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375-76 (10th Cir. 1977), the maximum recovery for Plaintiff's corrective advertising is 25% of this amount, which totals $83,327. Plaintiff did not rely on any other evidence in support of either of its state and federal trademark infringement claims or its unfair competition claims. In short, all of the damages awarded to Plaintiff flowed from the same operative facts (sales of the infringing animal feed). Plaintiff was fully compensated for Defendant's trademark infringement when it was awarded all of its lost profits of $176,728 and corrective advertising of $83,327 for a total damage claim of $260,055. Based on the case law stated above and for the reasons stated on the record at the January 16, 2008 hearing, Plaintiff cannot also be awarded additional damages under the state trademark infringement or the unfair competition theories based on the same sales of the infringing products. Under Tenth Circuit case law, even though damages are claimed based on separate statutes or causes of action, when the claims arise out of the same set of operative facts, as is the case here, there may only be one recovery. Thus, I find that Defendant's motion is granted. The $250,000 damage award for Plaintiff's state trademark infringement claim and the $20,792 damage award for Plaintiffs unfair competition- misappropriation of business value claim constitute a double recovery and are, therefore, vacated.

Accordingly, the Amended Judgment shall reflect that the damage award of

$4,925,336.13 is reduced by $270,792.00, which results in a total of $4,654,544.13.

### III.  Plaintiff's Motion to Enhance Actual and Punitive Damages (docket #485), filed October 15, 2007

In this motion, the Plaintiff contends that the actual damage award on its federal

and state trademark infringement, corrective advertising, and unfair competition claims

must be tripled pursuant to 15 U.S.C, § 1117(a).  The statute reads in relevant part:

> (a) Profits; damages and costs; attorney fees
> When a violation of any right of the registrant of a mark
> registered in the Patent and Trademark Office, a violation
> under section 1125(a) or (d) of this title, or a willful violation
> under section 1125(c) of this title, shall have been
> established in any civil action arising under this chapter, the
> plaintiff shall be entitled, subject to the provisions of
> sections 1111 and 1114 of this title, and subject to the
> principles of equity, to recover (1) defendant's profits, (2)
> any damages sustained by the plaintiff, and (3) the costs of
> the action....  *In assessing damages the court may enter
> judgment, according to the circumstances of the case, for
> any sum above the amount found as actual damages, not
> exceeding three times such amount.* If the court shall find
> that the amount of the recovery based on profits is either
> inadequate or excessive the court may in its discretion enter
> judgment for such sum as the court shall find to be just,
> according to the circumstances of the case. *Such sum in
> either of the above circumstances shall constitute
> compensation and not a penalty*.

15 U.S.C. § 1117(a) (emphasis added).  Based on the plain wording of the statute, the

relief afforded by this statute is designed to make Lanham Act violations unprofitable.

However, it is not intended to serve any punitive purpose.  *United Phosphorous, Ltd. v.*

*Midland Fumigant, Inc.*, 205 F.3d 1219, 1236 (10th Cir. 2000), *BASF Corp. v. Old*

*World trading Co.*, 41 F.3d 1081, 1092 (7th Cir. 1994).  Further, the decision to invoke

the statute's treble damages is within the sound discretion of the trial court. *Midland*, 205 F.3d at 1236.

Plaintiff next contends that I should treble the punitive damage award under the Colorado exemplary damages statute. Colo. Rev. Stat. § 13-21-102(1)(a) states that a jury may award reasonable exemplary damages not to exceed an amount which is equal to the amount of the actual damages awarded to the injured party. The statute goes on to permit the court to

> increase any award of exemplary damages, to a sum not to exceed three time the amount of actual damages, if it is shown that:
> (a) The defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner, either against the plaintiff or another person or persons, during the pendency of the case; or
> (b) The defendant has acted in a willful and wanton manner during the pendency of the action in a manner which has further aggravated the damages of the plaintiff when the defendant knew or should have known such action would produce aggravation.

Colo. Rev. Stat. 13-21-102(3).

In response, Defendant's primary argument is that on July 25, 2007, Plaintiff filed its Motion to Increase Jury Award 15 U.S.C. §1117 ("First Motion to Increase"), which asked the Court to exercise its discretion to increase the jury award against Land O' Lakes, Inc. (docket #467). After full briefing and a hearing on August 27, 2007, the Court weighed the equities of the case, denied the request to increase the jury award in Plaintiff's favor, and instead decreased the award. (Order, docket #475). Now, Plaintiff files a second motion to increase damages, which relies on the same theories already

rejected by the Court, the only change being the proposed increase would be to the amount of actual and punitive damages instead of the award of profits.

Turning to my analysis, I first address whether the actual damage award should be trebled pursuant to the Lanham Act. Plaintiff argues that Defendant's unlawful actions were willful and warrant additional sanctions to ensure that the Defendant "does not profit from its wrongdoing and to insure that it is deterred from future infringement." (Pl.'s Mot. at 7.) Plaintiff never argues that the jury's actual damage award was erroneous or insufficient. Instead, the Plaintiff contends that the actual damage award should be increased because of Defendant's conduct after the verdict in connection with continued sales of the offending product. Having considered Plaintiff's motion and Defendant's response, I determine, in my discretion, not to enhance damages under the statute. For the reasons stated on the record at the January 16, 2008 hearing, I am not persuaded by this argument. I find that Plaintiff was adequately compensated by the jury's verdict, as modified by this Order.

I next consider Plaintiff's argument that the jury's punitive damage award of $20,792.00 should be trebled pursuant to Colo. Rev. Stat. 13-21-102(3). In support of increasing the punitive damage award, Plaintiff first asserts that Defendant continued to use the Profile trademark after it represented that it had ceased all use in 2005. Specifically, Plaintiff states that the Profile trademark was found at the website roperquarterhorses.com. I note that the Plaintiff raised this same argument at the hearing on August 27, 2007. At that hearing, Plaintiff stated that the Profile mark appeared on the roperquarterhorses.com website. Defendant responded by stating

that it neither owns nor controls this website.  Defendant further stated that there is no Defendant-owned or controlled website where Profile is advertised.  (Realtime Tr. August 27, 2007.)  Contrary to the Plaintiff's assertions, I find that there is no credible evidence that Defendant has continued its use of the Profile mark.

Second, Plaintiff argues that since Defendant is a large company, the punitive damages should be increased.  However, Plaintiff does not provide any credible evidence that the Defendant used "its economic muscle to weaken a plaintiff who has threatened an infringement action." *Western Diversified Services, Inc. v. Hyundai Motor*, 427 F.3d 1269, 1274 (10th Cir. 2005).  Therefore, after reviewing the testimony on damages presented during the trial, hearing argument at the January 16, 2008 hearing and applying the law set forth above, I find that both the jury's actual and punitive damage awards against the Defendant are sufficient.  Moreover, Plaintiff was appropriately compensated, and an increase in damages is not warranted.  Thus, Plaintiff's motion is denied.

**IV.**     **Plaintiff's Motion for Entry of Permanent Injunction (docket #489), filed October 15, 2007**

In this motion, Plaintiff moves the Court for entry of an order granting permanent injunctive relief against any further use of the Profile trademark by Defendant or any of it subsidiaries and affiliates.  However, in its response, the Defendant objects to this motion, arguing that it is untimely.  Defendant argues that the Plaintiff never included any language regarding injunctive relief in the Pretrial Order.  Defendant further asserts that the Final Pretrial Order contains exclusively monetary remedies, thus Plaintiff may

not raise this as a new issue after trial. I agree.

At the hearing on January 16, 2008, Plaintiff conceded that it had not set out specific language requesting a claim for injunctive relief in the Final Pretrial Order. Instead, Plaintiff argued that since it had mentioned injunctive relief in the Third Amended Complaint, the "merger language" in the Final Pretrial Order was sufficient to preserve its claim for injunctive relief. Specifically, page 28, section 12 of the Final Pretrial Order states that "the pleadings will be deemed merged herein." However, the Plaintiff could cite to no authority to support this argument. The Tenth Circuit case law states that "[a] pretrial order controls the subsequent course of the suit unless the trial court modifies it to prevent manifest injustice." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1235 (10th Cir. 2000); *Rock Island Imp. Co. v. Helmerich & Payne, Inc.*, 698 F.2d 1075, 1081 (10th Cir.), cert. denied, 461 U.S. 944 (1983).

Turning to my analysis, I note that I took an active role in the eventual approval of the Final Pretrial Order. Because of the contentious nature of this case, I held the Final Pretrial Conference, and I approved the Final Pretrial Order. In considering this motion, I once again reviewed the language of Final Pretrial Order. The words "injunction" or "injunctive relief" appear nowhere. Rather, in the Final Pretrial Order, Plaintiff limited its requests for relief from Defendant exclusively to monetary remedies. Further, the parties stipulated to the terms of the Final Pretrial Order and submitted a two-page stipulation to clarify a point of confusion regarding one of the Plaintiff's claims for unfair competition. Obviously, the parties carefully reviewed the Final Pretrial Order

after it was entered by me. Plaintiff had every opportunity to include a request for injunctive relief if it intended to pursue such relief through trial.

While I was not able to locate any Tenth Circuit authority addressing the issue of a plaintiff attempting to obtain an injunction after trial that it did not seek in the pretrial order, there are cases in other jurisdictions that speak to this issue. However, in these cases, the courts rejected the claims as untimely. *See Alexander v. Riga*, 208 F.3d 419 (3rd Cir. 2000), cert. denied, 531 U.S. 1069 (2001) (rejecting a claim for injunctive relief asserted after trial that was not included in the pretrial order as untimely); *Carpet Group Intern. v. Oriental Rug Importers Ass'n*, 2005 WL 3988699, at *8 (D.N.J. 2005), aff'd, 173 Fed. Appx. 178 (3rd Cir. 2006) (disallowing a petition to enjoin what the jury found to be anticompetitive conduct, because plaintiffs "did not assert their prayer for injunctive relief in the final pretrial order nor in the trial brief"); *Florida v. Elsberry*, 1985 WL 6278 (N.D. Fla. 1985) (holding that a plaintiff waived the request for injunctive relief in its complaint and amended complaint, where it did not reiterate that claim anywhere in the exhaustive pretrial stipulation or mention it in any of the pretrial conferences or orders). The holdings of *Alexander*, *Carpet Group*, and *Elsberry* are consistent with the rule in this circuit that "[t]he purpose of the pre-trial order is to insure the economical and efficient trial of every case on its merits without chance or surprise."[1] *Grant v. Brandt*, 796 F.2d 351, 355 (10th Cir. 1986). Therefore, I reject Plaintiff's argument and find that its request for injunctive relief is untimely. Accordingly, Plaintiff's motion for a

_____

[1]Plaintiff did not present any evidence or reference injunctive relief during the two-week trial.

permanent injunction is denied.

**V.      Defendant's Motion to Reduce Award of Pre-judgment Interest
(docket #487), filed October 15, 2007**

In this motion, the Defendant is requesting three forms of relief: (1) the Court
should not add any pre-judgment interest to the amount awarded as Defendant's profits
or corrective advertising; (2) the Court should reduce the interest rate on any federal
claims to approximately 3%; and (3) the Court should limit pre-judgment interest on all
claims to the period after the awarded damages were incurred.

The award of pre-judgment interest "rests firmly within the sound discretion of
the trial court." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir.
2002); *see also Zuchel v. City and County of Denver*, 997 F.2d 730, 746 (10th Cir.
1993). "A two-step analysis governs the determination of such an award." *Caldwell*,
287 F.3d at 1286.  In exercising its discretion, "[t]he district court must first determine
whether the award of pre-judgment interest will serve to compensate the injured party.
Second, even if the award of pre-judgment interest is compensatory in nature, the
district court must still determine whether the equities would preclude the award of pre-
judgment interest." *Id.*

In the case at hand, I find that, an award of pre-judgment interest is
compensatory in nature rather than punitive.  As noted by *Caldwell*, "the rule in this
circuit is that pre-judgment interest is generally available 'to compensate the wronged
party for being deprived of the monetary value of his loss from the time of the loss to
the payment of the judgment.'"  *Id.*  Additionally, in *United Phosphorus*, 205 F.3d at

1236, the Tenth Circuit held that "in the federal context, this Court has adopted a preference, if not a presumption, for pre-judgment interest." With respect to Defendant's first argument, I find that the equities do not preclude the award of pre-judgment interest on the award of Defendant's profits, but rather support the entry of such an award, particularly given the fact that the jury found the Defendant's infringement of Plaintiff's trademark to be deliberate, willful, and in bad faith. *See I Can't Believe It's Not Yogurt v. Gunn*, 1997 WL 599391, at *18. However, I agree with the Defendant that pre-judgment interest should not be applied to the award for corrective advertising. This award of $83,327.00 is for future remediation, not actual damages suffered by the Plaintiff. Therefore, after applying the two-step analysis here, I find, in my discretion, that pre-judgment interest should be applied to all of the damages awarded to the Plaintiff except damages for corrective advertising.

With respect to Defendant's second argument as to the appropriate rate of pre-judgment interest on the damages governed by federal law, the Tenth Circuit has held that "[b]ecause there is no federal statutory interest rate on pre-judgment interest, the rate imposed will be left to the trial court's discretion." *Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1042 n. 4 (10th Cir. 1991); *see also Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002). This case was initially brought under federal law - the Lanham Act. Thus, the damages arising out of the federal trademark infringement (the Lanham Act) are governed by federal law, not state law. *Guides*, 295 F.3d at 1078. In *Caldwell*, the Tenth Circuit did not enunciate a standard for pre-judgment interest, it only affirmed the district court's

discretionary decision in calculating such interest. Ultimately, the issue of what rate to apply turns on what interest rate I determine will fairly compensate the Plaintiff. *Towerridge, Inc. v. T.A.O.*, 111 F.3d 758, 764 (10th Cir .1997).

In the case at hand, I find that the interest rate advocated by the Plaintiff of 8% or higher is too high and would serve to punish the Defendants rather than to compensate Plaintiff. Instead, I believe that the formula used to calculate the federal post-judgment interest rate is fair to both parties and will adequately compensate Plaintiff for the losses incurred from Defendant's willful infringement. The statutory basis for the post-judgment interest rate is the average from the past four (4) years of the "1-year maturity treasury yield" rates**.** The approach to reaching this rate was approved by the Tenth Circuit in *Caldwell*. *Caldwell*, 287 F.2d at 1287. Thus, I perform a similar analysis here for the Treasury rates during the relevant time period. Over the 69 months from 2002 to September 2007, the average one-year maturity Treasury yields has been 3.0087%.[2] *See* <<http://www.economagic.com/em-cgi/data.exe/feddal/rmgnblm:(rev)>>. In my discretion, I find that the interest rate of approximately 3% is sufficient to compensate the Plaintiff while not punishing the Defendant. Accordingly, the rate of pre-judgment interest to be applied to the total profit award and the total actual damages (except corrective advertising) is 3%.

Third, I address the issue of when pre-judgment interest begins to run. Having reviewed the applicable Tenth Circuit law, I find that pre-judgment interest should run from the date of the loss, rather than from the date of the filing of the Complaint. *See*

---

[2] This formula was submitted to the Court in the Defendant's Motion.

*Caldwell*, 287 F.3d at 1286; *Pabst v. Oklahoma Gas & Electric Co.*, 228 F.3d 1128, 1136 (10th Cir. 2000) (affirming district court's decision to reject defendant's argument that "pre-judgment interest should be awarded only from the time the complaint was filed, rather than for the entire period of recovery").  At the hearing on January 16, 2008, I ordered the parties to submit statements regarding the calculation of pre-judgment interest related to the damages in this case.  In their submissions, the parties indicated that they agree on the methodology to apply in calculating pre-judgment interest.  Using the agreed upon methodology and calculating the pre-judgment interest at a rate of 3% (excluding the $83,327.00 amount awarded for corrective advertising) yields the following interest on the total profit award and the total actual damages of $176,728.00:

| Rate | Interest Through September 2007 Using Mid-year Calculation |
|:---:|:---:|
| 3.00% | $614,142.12 |

(*See* Ex. A to this Order for spreadsheet.)

As to post-judgment interest, I find that such interest shall run only from the date of the entry of an Amended Judgment, not the Judgment, and shall apply to the total amount of such Judgment, $4,654,544.13, plus pre-judgment interest of $614,142.12, and the Bill of Costs entered by the Clerk on October 16, 2007 in the amount of $72,191.90.  The amount of attorneys' fees to be awarded will be determined at a later date as explained below.  Thus, Defendant's motion is granted consistent with this

portion of my Order.

**VI.    Plaintiff's Motion for Attorney's Fees and Expenses (docket #488), filed October 15, 2007**

Pursuant to a settlement agreement reached between the parties and United States Magistrate Judge Craig B. Shaffer on November 29, 2007, the amount to be awarded as attorneys' fees will be determined at a later date. The parties stated the following on the record at a telephonic conference on November 30, 2007:

1.    The District Judge will refer Plaintiff's First Motion for Attorneys' Fees and Costs to Magistrate Judge Shaffer for a recommendation on the appropriate "lodestar" calculation. In that regard, Magistrate Judge Shaffer will issue findings of fact and a recommendation with respect to reasonable hourly rates and reasonable hours expended. The parties further agreed that they will not file any Rule 72 objections regarding Magistrate Judge Shaffer's "lodestar" calculation.

2.    Defendant's Response to Plaintiff's Motion for Attorneys' Fees challenges Cache La Poudre's lodestar calculation. As indicated, that challenge will be referred to Magistrate Judge Shaffer. As a separate ground for challenging the fee application, Defendant contends that "even in 'exceptional' cases, Tenth Circuit law and the legislative history of the Lanham Act require the court to consider whether the equities of the particular case support an award of attorney's fees at all." Defendant argues that the District Court "has already weighed the equities and determined that a profits award of $4.4 million 'serves as a deterrent to Land O' Lakes.'" Given the District Court's prior rulings, the parties have agreed that Defendant's "equitable" challenge to Plaintiff's fee application should remain with the District Judge.

3.    The parties have also agreed that they will not appeal any ruling by the District Court with respect to the First Motion for Attorneys' Fees. However, the parties acknowledged on the record that Plaintiff's entitlement to fees as a "prevailing party" will ultimately hinge on the outcome of any appeal of other issues filed with the Tenth Circuit. The parties reserved the right to return to the district Court to address the issue of "entitlement" of fees (not amount) in light of any ruling by the Tenth Circuit.

(November 30, 2007 Telephonic Conference.)

With respect to Defendant's contention that it would be inequitable for the Court to award attorneys' fees in this matter, I reject this argument. Under the Lanham Act, the Court may award reasonable attorneys' fees in an exceptional case pursuant to 15 U.S.C. § 1117(a). An exceptional case is one in which the trademark infringement can be characterized as "malicious, fraudulent, deliberate, or willful." *United Phosphorus*, 205 F.3d at 1232. Further, the costs can be awarded under the Act subject to the principles of equity. In this case, the jury found that Defendant's conduct was willful, and the testimony at trial supported that finding. The jury also found that Defendants' conduct was willful or in bad faith beyond a reasonable doubt in connection with the award of punitive damages on the state unfair competition claim. Therefore, after weighing the equities, I find that this case is exceptional within the meaning of 15 U.S.C. § 1117(a) and that an award of reasonable attorneys' fees and costs is appropriate. Thus, Plaintiff's motion, to the extent it requests an award of attorneys' fees and costs, is granted. As noted above, the amount of attorneys' fees to be awarded to the Plaintiff will be determined at a later date pursuant to the settlement agreement reached with Magistrate Judge Shaffer.

**VII.    Conclusion**

In conclusion, based on the foregoing, it is

ORDERED that Defendant's Motion to Reduce the Judgment Against It of Actual Damages to $260,055 (docket #486), filed October 15, 2007 is **GRANTED.** The $250,000 damage award for Plaintiff's state trademark infringement claim and the

$20,792 damage award for Plaintiffs unfair competition- misappropriation of business value claim constitute a double recovery and are, therefore, **VACATED**. Accordingly, **the Amended Judgment shall reflect that the damage award of $4,925,336 is reduced by $270,792.00, which results in a total of $4,654,544.13.** It is

FURTHER ORDERED that Plaintiff's Motion to Enhance Actual and Punitive Damages (docket #485), filed October 15, 2007 is **DENIED.** It is

FURTHER ORDERED that Plaintiff's Motion for Entry of Permanent Injunction (docket #489), filed October 15, 2007 is **DENIED.** It is

FURTHER ORDERED that Defendant's Motion to Reduce Award of Pre-judgment Interest (docket #487), filed October 15, 2007 is **GRANTED** consistent with this Order. Using the agreed upon methodology and calculating the pre-judgment interest at a rate of 3% (excluding the $83,327.00 amount awarded for corrective advertising) yields the following interest on the total profit award and the total actual damages of $176,728.00: $614,142.12. Accordingly, **the Amended Judgment shall reflect that the total amount of pre-judgment interest to be applied is $614,142.12.** It is

FURTHER ORDERED that post-judgment interest shall run from the date of the Amended Judgment on the total amount of this Judgment, $4,654,544.13 plus pre-judgment interest, $614,142.12, and the Bill of Costs entered by the Clerk on October 16, 2007 in the amount of $72,191.90. The award of attorneys' fees will be determined at a later date as explained in this Order. It is

FURTHER ORDERED that Plaintiff's Motion for Attorney's Fees and Expenses

(docket #488), filed October 15, 2007 is **GRANTED**.  The Court finds that this is an exceptional case pursuant to 15 U.S.C. § 1117(a).  The amount of attorneys' fees to be awarded to the Plaintiff will be determined at a later date pursuant to the settlement agreement reached between the parties and Magistrate Judge Shaffer.

     Dated:  January 29, 2008

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge